Herbert **WEISSMAN,** Ethel **Weissman** and **Fundways, Ltd.,** Plaintiffs,

v.

James P. **HASSETT,** Individually, and James P. Hassett, as Trustee of O.P.M. Leasing Services, Inc., Defendant.

No. 84 Civ. 2869 (GLG).

United States District Court, S.D. New York.

March 13, 1985.

Jeffrey D. Buss, New York City, for plaintiffs.

Wilmer, Cutler & Pickering, Washington, D.C., and Zalkin, Rodin & Goodman, New York City, for defendant; Lynn Bregman, Washington, D.C., and Henry Lewis Goodman, New York City, of counsel.

## OPINION

GOETTEL, District Judge:

This action for libel, intentional infliction of emotional distress, and intentional interference with business relations arises out of statements in the report of a bankruptcy trustee concerning what some call the "Other People's Money" case (drawn from the initials of the company involved—OPM). Before the Court is the bankruptcy trustee's motion to dismiss the complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim upon which relief can be granted. For the reasons stated below, the motion is granted.

### I. Background

Between 1970 and 1981, O.P.M. Leasing Services, Inc. ("OPM"), a computer leasing concern, bilked numerous financial institutions and computer lessees out of approximately $228 million. The OPM bubble burst in February 1981, when the United States Attorney's office in Manhattan convened a grand jury to investigate allegations that OPM had perpetrated a massive fraud. On March 11, 1981, OPM filed a voluntary petition for reorganization with the bankruptcy court for this district.

Acting on the application of certain creditors, pursuant to 11 U.S.C. § 151104(a) (1982),[1] the bankruptcy court directed the United States Trustee for this district to appoint a reorganization trustee for OPM. On March 27, 1981, the United States Trustee appointed the defendant, James P. Hassett as reorganization trustee ("the Trustee"). The bankruptcy court approved Mr. Hassett's appointment.[2]

1. At any time after the commencement of the case but before confirmation of a plan, on request of a party in interest or the United States trustee, and after notice and a hearing, the [bankruptcy] court shall order the appointment of a trustee—

(1) for cause, including fraud, dishonesty, incompetence, or gross mismanagement of the affairs of the debtor by current management, either before or after the commencement of the case, or similar cause, but not including the number of holders of securities of the debtor or the amount of assets or liabilities of the debtor....

(2) if such appointment is in the interests of creditors, any equity security holders, and other interests of the estate, without regard to the number of holders of securities of the debtor or the amount of assets or liabilities of the debtor.

11 U.S.C. § 151104(a) (1982).

2. 11 U.S.C. § 151104(c) (1982) prescribes the appointment procedure. It states, "If the court orders the appointment of a trustee or an exam-

The Trustee soon commenced an investigation into the alleged OPM fraud as section 1106(a)(3) of the Bankruptcy Code required. That section mandates that, except to the extent the court orders otherwise, a reorganization trustee shall "investigate the acts, conduct, assets, liabilities and financial condition of the debtor, the operation of the debtor's business and the desirability of the continuance of such business, and any other matter relevant to the case or to the formulation of a plan." 11 U.S.C. § 1106(a)(3) (1982). As the two-year investigation came to a close, the Trustee prepared a report summarizing his findings. Anticipating heavy public demand for the report, the Trustee submitted a proposed distribution scheme to the bankruptcy court. On February 14, 1983, the bankruptcy court adopted the Trustee's proposal and issued an order directing him to transmit copies of the report to:

[the Court]; the Creditors' Committee; ... the United States Trustee; all persons who have filed Notices of Appearance in the case; and such law enforcement officers, agencies, professional associations, and persons empowered to make policy with respect to matters discussed in the Report as determined appropriate by the Trustee; and ... to any other person or entity who requests them [at a price of $20 each].

Plaintiff's Memorandum of Law in Opposition to Defendant's Motion to Dismiss the Complaint, Exhibit F. On April 25, 1983, the Trustee issued his 600-page report, *In re OPM Leasing Services, Inc.*, Report of the Trustee Concerning Fraud and Other Misconduct in the Management of the Affairs of the Debtor (the "Report"). Amended Complaint, Exhibit F. The Report was disseminated in compliance with the court's order.

The subject of this lawsuit are three sentences in a subsection of the Report labeled "Phantom Employees." That section details OPM's payments to various relatives of its president, Mordecai Weissman. The three sentences read as follows: "From 1976 to 1980, Herbert Weissman and Fundways received 'commissions' from OPM aggregating $447,295. The nature of any services rendered by Herbert Weissman for these payments is uncertain. Herbert Weissman once told an employee in the OPM Accounting Department that the funds were 'loans' from his brother." Report at 190. The plaintiffs, Herbert Weissman (Mordecai Weissman's older brother) and Fundways, allege that this passage libeled them and that the Trustee's filing and publication of the Report interfered with and damaged their business relationships. Each seeks damages of $10 million from the Trustee, both in his official capacity and individually. Based on the same facts, Herbert Weissman's wife, Ethel, and their six children allege that the Trustee intentionally inflicted on them emotional distress. Each of the seven family members seeks damages of $1 million from the Trustee.

The Trustee claims that, as a federal quasi-judicial official, he is absolutely immune from liability on any claim arising out of statements in his Report. He also asserts that the statements in his Report were made in a judicial proceeding and are absolutely privileged under New York law. The Trustee, therefore, moves to dismiss the complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim upon which relief can be granted.

Both parties buttressed their arguments on this motion with affirmations, affidavits, and other materials outside the pleadings. Consequently, we treat this as a motion for summary judgment pursuant to Fed.R. Civ.P. 56. We may grant the motion only if the memoranda and supporting materials before us "disclose that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." C. Wright, A. Miller & M.

iner, ... then the United States trustee, after consultation with parties in interest, shall appoint, subject to the court's approval, one disin-terested person other than the United States trustee to serve as trustee ... in the case."

Kane, *Federal Practice and Procedure* § 2725 (2d ed. 1983) (quoting Fed.R.Civ.P. 56(c)). For the reasons stated below, we conclude that the defendant has met this difficult standard. His motion for summary judgment is, therefore, granted.

## II. *Discussion*

### A. *Absolute Immunity*

■ Public officials, judges, and court officials are absolutely immune from common law tort liability for actions within the scope of their official duties. *Stump v. Sparkman,* 435 U.S. 349, 98 S.Ct. 1099, 55 L.Ed.2d 331 (1978) (judge immune from defamation suit); *Barr v. Matteo,* 360 U.S. 564, 79 S.Ct. 1335, 3 L.Ed.2d 1434 (1959) (acting director of federal office of rent stabilization immune from defamation suit). Absolute immunity bars a suit at the outset, *Gray v. Bell,* 712 F.2d 490, 496 (D.C. Cir.1983), *cert. denied,* — U.S. —, 104 S.Ct. 1593, 80 L.Ed.2d 125 (1984), excusing even allegations of bad faith, malice, or gross error, *Stump v. Sparkman, supra,* 435 U.S. at 355–56, 98 S.Ct. at 1104. Whether a bankruptcy trustee who prepares and disseminates a report after investigating the bankrupt's affairs is absolutely immune from common law tort liability arising out of statements in his report is a question of first impression.

■ Bankruptcy trustees serve a variety of functions. Under current law, a trustee is immune from liability for claims arising out of some but not all of those functions. A trustee's position will not immunize him from suit for torts committed in conducting the business affairs of a bankrupt company. *See, e.g., Mosser v. Darrow,* 341 U.S. 267, 71 S.Ct. 680, 95 L.Ed. 927 (1951); *In re Cochise College Park,* 703 F.2d 1339, 1357 n. 26 (9th Cir.1983); 4 *Collier on Bankruptcy* ¶ 721.05 (L. King, Ed.1984). On the other hand, trustees and receivers acting as officers of the court to conserve the bankrupt estate's assets are immune from suit. *Boullion v. McClanahan,* 639 F.2d

213, 214 (5th Cir.1981) (Trustee absolutely immune from suit for, *inter alia,* "(1) recommending an inexperienced appraiser; (2) allowing the filing of an incorrect appraisal; (3) improperly handling sales of the estate property...."); *Kermit Construction Corp. v. Banco Credito Y Ahorro Ponceno,* 547 F.2d 1 (1st Cir.1976); *Bradford Audio Corp. v. Pious,* 392 F.2d 67 (2d Cir.1968); *Smallwood v. United States,* 358 F.Supp. 398 (E.D.Mo.), *aff'd,* 486 F.2d 1407 (8th Cir.1973).

■ Neither the Trustee's investigation nor the Report related in any way to the ongoing operation of a business; rather, the investigation was part of the Trustee's duty to assemble the bankrupt estate. Upon completing his investigation, a trustee must "file a statement of any investigation conducted ..., including any fact ascertained pertaining to fraud, dishonesty, incompetence, misconduct, mismanagement, or irregularity in the management of the affairs of the debtor, or to a cause of action available to the estate...." 11 U.S.C. § 1106(a)(4)(A) (1982). Thus, the issuance of a report is a necessary concomitant to a trustee's investigation.[3] Just as receivers and trustees are immune from suit for actions taken to assemble a bankrupt estate's assets, so too a reorganization trustee should be immune for an investigation and report furthering the same purposes.

Although no precedent immunizes a bankruptcy trustee who investigates and issues a report, courts have held public and judicial officials who act in that capacity immune from suit. In *Sprecher v. Graber,* 716 F.2d 968 (2d Cir.1983), the Second Circuit held an SEC staff attorney immune from suit for statements made during an investigation into possible violations of the antifraud provisions of the federal securities laws. Another court granted absolute immunity to a probation officer who, at the court's request, investigated and filed a presentence report. *Crosby-Bey v. Jansson,* 586 F.Supp. 96 (D.D.C.1984). Like-

---

**3.** Indeed, as a result of his investigation, the Trustee is now pursuing a fraudulent convey-

ance claim against plaintiffs Herbert Weissman and Fundways.

wise, a court appointed receiver was held absolutely immune from a suit arising out of statements in a report to the appointing court. *Blum v. Campbell*, 355 F.Supp. 1220, 1224–25 (D.Md.1972). These precedents, standing unopposed, counsel us to hold the Trustee absolutely immune from suits arising out of his investigation and Report.

■■■ However, the plaintiffs argue that the Trustee, by distributing his Report to press and public alike, forfeited any absolute immunity to which he might otherwise have been entitled. In so contending, they ignore an important function of the Report: to expose the nature and extent of the OPM fraud, and thereby prevent similar frauds. *See Austrian v. Williams*, 198 F.2d 697, 702 (2d Cir.), *cert. denied*, 344 U.S. 909, 73 S.Ct. 328, 97 L.Ed. 701 (1952) ("[O]ne of the purposes for conferring upon the trustee in reorganization broad investigatory powers" is "the exposure of corporate abuses...."). The courts recognize that dissemination of a judicial opinion or report may serve an important public purpose. They have, therefore, immunized those who do the disseminating. *See Lowenschuss v. West Publishing Co.*, 542 F.2d 180 (3d Cir.1976) (publishing service's verbatim publication and dissemination of judicial opinion to the public serves an important judicial purpose and official publisher may claim absolute judicial immunity). Distribution of the Trustee's report furthered an important public purpose and should not render him subject to suit, particularly since he acted pursuant to court order and statutory authorization. Moreover, the decisions that absolutely immunize receivers and trustees stress that they acted at the court's behest or under its supervision and subject to its orders. *See, e.g., Boullion v. McClanahan, supra*, 639 F.2d at 214 ("[A] trustee acting at the direction of a bankruptcy judge is clothed with absolute immunity against tort actions grounded on his conduct as trustee."). A

reorganization trustee should not be subject to suit for his actions in a similar capacity.[4]

Sound policy also counsels immunizing the defendant. Absolute immunity is essential because, as Judge Learned Hand noted, "to submit all officials, the innocent as well as the guilty, to the burden of a trial and to the inevitable danger of its outcome, would dampen the ardor of all but the most resolute, or the most irresponsible, in the unflinching discharge of their duties." *Gregoire v. Biddle*, 177 F.2d 579, 581 (2d Cir.1949), *cert. denied*, 339 U.S. 949, 70 S.Ct. 803, 94 L.Ed. 1363 (1950). The plaintiffs here seek more than $25 million in damages and contend that the Trustee can be personally liable for that amount. Even a remote prospect of personal liability of such a magnitude could not help but lessen the vigor with which future reorganization trustees will pursue their obligations to uncover wrongdoing and report on potential claims held by a bankrupt estate.

On the other hand, the Court's holding will not encourage vindictive and overzealous bankruptcy trustees to abuse their powers. Safeguards within the Bankruptcy Code effectively check such abuses. For example, section 107(b)(2) of the Bankruptcy Code, 11 U.S.C. § 107(b)(2) (1982), authorizes bankruptcy courts to protect a person with respect to scandalous or defamatory matter contained in a trustee's report. In addition, the bankruptcy court must approve the trustee's compensation. 11 U.S.C. § 326 (1982). Finally, section 324 of the Bankruptcy Code, 11 U.S.C. § 324 (1982), authorizes a bankruptcy judge to remove a trustee for cause.

■■■ The Bankruptcy Code protects against any collusion between the bankruptcy court and the trustee that might limit the effectiveness of these safeguards. Of particular importance is that an indepen-

---

**4.** In issuing and disseminating his Report, the Trustee also fulfilled his statutory duty to "transmit a copy or a summary of any [report] to any creditors' committee or equity security holders' committee, to any indenture trustee, and to such other entity as the court designates." 11 U.S.C. § 1106(a)(4) (1982).

dent United States trustee, the official responsible for the administration of bankruptcy cases in this district, appoints all reorganization trustees. 11 U.S.C. § 151104(a)(1), (2), (c) (1982). Whereas bankruptcy judges once reviewed the orders of their appointees, the new bankruptcy system ensures that an impartial judge reviews the trustee's decisions. H.R.Rep. No. 595, 95th Cong., 2d Sess. 88–116 (1978), *reprinted in* 1978 U.S.Code Cong. & Ad. News 5787, 5963, 6049–76.[5] We, therefore, have no misgivings about holding the Trustee immune from suits arising out of statements in his Report.

### B. *Privilege for Statements in Judicial Proceedings*

 In addition to asserting that he is immune from suit as a federal judicial official, the Trustee also contends that the Report itself is absolutely privileged under New York law.[6] Under the law of New York, statements that arise in the course of a judicial proceeding, and are relevant and pertinent thereto, are absolutely privileged. *Park Knoll Associates v. Schmidt,* 59 N.Y.2d 205, 209, 451 N.E.2d 182, 464 N.Y.

S.2d 424 (1983). The privilege protects statements regardless of the speaker's state of mind, knowledge of falsity, or the injury the statements cause. *Id.;* W. Prosser, *Handbook of the Law of Torts* § 114, at 776 (4th ed. 1971). The privilege "embraces anything that may possibly be pertinent or which has enough appearance of connection with [a judicial proceeding] so that a reasonable man might think it relevant. All doubt should be resolved in favor of its relevancy or pertinency...." *Seltzer v. Fields,* 20 A.D.2d 60, 63, 244 N.Y. S.2d 792 (1st Dep't 1963), *aff'd,* 14 N.Y.2d 624, 249 N.Y.S.2d 174, 198 N.E.2d 368 (1964). Given this flexible pertinency requirement, our task is to determine whether the investigation and issuance of a bankruptcy trustee's report constitute "judicial proceedings." We believe they do.

 In New York, it is settled law that a bankruptcy proceeding is a judicial proceeding. *Marsh v. Ellsworth,* 50 N.Y. 309 (1872); *Friedman v. Alexander,* 79 A.D.2d 627, 628, 433 N.Y.S.2d 627, 628 (2d Dep't 1980); *Schwartz v. Bartle,* 49 Misc.2d 848, 268 N.Y.S.2d 715 (Sup.Ct.1966); *Abrams v. Crompton-Richmond Co.,* 7 Misc.2d 461,

---

5. The plaintiffs present additional arguments in an attempt to defeat this motion. They first assert that the court's authorization cannot immunize the Trustee because the court never authorized him to defame anyone. This contention is meritless. Accepting it would render the absolute immunity doctrine meaningless, for only those who had not committed a tort would be entitled to immunity, which they would never need to invoke. The doctrine would then serve no purpose.

In addition, according to the plaintiffs, the Trustee should have submitted the Report to the court for pre-publication review or requested a grant of absolute immunity or privilege. The Bankruptcy Code nowhere sanctions such prepublication review and has no power to cloak the Trustee with absolute immunity. Indeed, the court's only function was to direct the manner of the Report's distribution.

Finally, the plaintiffs attempt to skirt the Trustee's immunity defense to the claims of intentional infliction of emotional distress and tortious interference with business relations. They argue that those claims are based, in part, on the Trustee's malicious failure to carefully investigate and that the Trustee is not immune from suit for such conduct. The plaintiffs can-

not avoid the rule of absolute immunity in this manner. To distinguish the improperly conducted investigation from the otherwise proper exercise of quasi-judicial authority would "'emasculate the immunity defense by applying it only to conduct for which it is not needed.'" *McManus v. McCarthy,* 586 F.Supp. 302, 304 (S.D.N.Y.1984) (quoting *Wallen v. Domm,* 700 F.2d 124, 126 (4th Cir.1983)). All three claims arise out of the investigation and Report. Absolute immunity for that conduct attaches to each claim.

6. Rule 501 of the Federal Rules of Evidence provides that "in civil actions and proceedings, with respect to an element of a claim or defense as to which State law supplies the rule of decision, the privilege of a witness, person, government, State, or political subdivision therefor shall be determined in accordance with State law." Fed.R.Evid. 501. Since the complaint alleges causes of action under New York law, the New York law of privilege applies in this case. This law of privilege supplements the immunity that protects federal officials regardless of the nature of the action brought against them. *See Sprecher v. Graber,* 716 F.2d 968, 975 (2d Cir.1983) (applying federal official immunity to common law tort claims).

164 N.Y.S.2d 124 (Sup.Ct.1957), *aff'd,* 5 A.D.2d 811, 170 N.Y.S.2d 981 (1st Dep't 1958). Actions to augment the assets of a bankrupt estate are considered part of a judicial proceeding. Thus, a letter from a bankrupt company's court appointed operating officer to various creditors that purported to recount another creditor's alleged improprieties was held privileged as part of such a proceeding. *Friedman v. Alexander, supra,* 79 A.D.2d at 628, 433 N.Y.S.2d at 628. Letters written by members of an informal creditors' committee charging an individual with dealing fraudulently with the bankrupt company are also privileged. *Schwartz v. Bartle, supra,* 49 Misc.2d at 849, 268 N.Y.S.2d 715. The statements herein at issue, like the statements noted above, concerned the possible improprieties of one having business dealings with the bankrupt estate. A trustee's statements such as these are so central to the proceedings that they deserve protection at least equal to, if not greater than, that accorded statements by other interested parties.[7]

■ Application of New York's law of privilege in this case is consistent with the policies that underly the privilege. The doctrine insulates parties to judicial proceedings from harrassment and fear of financial hazard and thereby encourages them to speak freely. *Park Knoll Associates v. Schmidt, supra,* 59 N.Y.2d at 209, 451 N.E.2d 182, 464 N.Y.S.2d 424. The rule thus aids "the search for truth which is the heart of any and all judicial proceedings." *Star v. Simonelli,* 76 A.D.2d 861, 428 N.Y.S.2d 617, 618 (2d Dep't 1980). Freeing the Trustee from liability promotes thorough investigation and comprehensive reporting by one whose aim is to seek the truth about corporate fraud and mismanagement.

■ The plaintiffs contend that the Trustee waived his privilege when he disseminated the Report. The plaintiffs cite *Murray v. Brancato,*[8] 290 N.Y. 52, 48 N.E.2d 257 (1943), to support their contention. In that case, the plaintiff alleged that a judge maliciously composed two opinions and caused them to be reported in unofficial reporters, with the intent to defame the plaintiff and to injure his law practice. Accepting these allegations as true, the court held that the judge's alleged publication of his decisions in an unofficial reporter was beyond the scope of his judicial function and capacity. Accordingly, the judge's statements were not absolutely privileged. The plaintiffs attempt to extend the *Murray* holding to this case. However, the cases differ in an essential respect. Whereas the judge in *Murray* did not forward his decisions pursuant to a statutory directive or a court order, the Trustee distributed his Report pursuant to statutory directive and the bankruptcy court's order. Moreover, the plaintiffs' waiver argument ignores the public interest in the exposure of corporate abuses through bankruptcy proceedings. A trustee's report on the results of his investigation into a massive fraud is privileged when distributed in accordance with an order designating an appropriate method of distribution.

## III. *Conclusion*

The plenary action by the Trustee to recover the funds in question may resolve the propriety of Fundway's and Weiss-

---

7. Although no American courts have considered whether statements in a trustee's report are privileged, the English courts have applied the doctrine of absolute privilege to official reports of the receivers of bankrupt companies. *Bottomley v. Brougham* (Eng) [1908] 1 KB 584; *Burr v. Smith* (Eng) [1909] 2 KB 306, 16 Manson 210—CA.

8. The plaintiffs also argue that *Williams v. Williams,* 23 N.Y.2d 592, 246 N.E.2d 333, 298 N.Y.

S.2d 473 (1969), supports their position. That decision examined an attempt to apply N.Y.Civil Rights Law § 74 (McKinney 1976), which prevents civil actions against any person "for the publication of a fair and true report of any judicial proceeding." N.Y.Civ.Rights Law § 74 (McKinney 1976). The defendants have not claimed that they are entitled to a privilege under this statute. Thus, any cases decided thereunder are inapposite.

man's receipt of OPM funds. *See supra* note 3. Even if it should be shown that the transactions were valid, the result here would still be appropriate. As Judge Learned Hand so eloquently stated, some thirty years ago,

It does indeed go without saying that an official, who is in fact guilty of using his powers to vent his spleen upon others, or for any other personal motive not connected with the public good, should not escape liability for the injuries he may so cause; and, if it were possible to practice to confine such complaints to the guilty, it would be monstrous to deny recovery. The justification for doing so is that it is impossible to know whether the claim is well founded until the case has been tried, and that to submit all officials, the innocent as well as the guilty, to the burden of a trial and to the inevitable danger of its outcome, would dampen the ardor of all but the most resolute, or the most irresponsible, in the unflinching discharge of their duties. Again and again the public interest calls for action which may turn out to be founded on a mistake, in the face of which an official may later find himself hard put to it to satisfy a jury of his good faith. There must indeed be means of punishing public officers who have been truant to their duties; but that is quite another matter from exposing such as have been honestly mistaken to suit by anyone who has suffered from their errors. As is so often the case, the answer must be found in a balance between the evils inevitable in either alternative. In this instance it has been thought in the end better to leave unredressed the wrongs done by dishonest officers than to subject those who try to do their duty to the constant dread of retaliation.

*Gregoire v. Biddle, supra,* 177 F.2d at 581.

The defendant's motion to dismiss the complaint is granted. The Clerk will enter judgment accordingly.

SO ORDERED.