Margot LUEDKE, Janet Weeks, Patricia Herlihy, Christine Klepeis, Christopher Mulraine, William Worrell, Gladys Healy, Cecilia Tagliaferri, Marie Leicht, Samuel P. Leinbach, Jr., Merlin Leon Tryon, Hans S. Oey, and John Green on behalf of themselves and all others similarly situated, Plaintiffs,

v.

DELTA AIR LINES, INC., Defendant and Third–Party Plaintiff,

v.

PAN AM CORPORATION, PAA Corp., Pan American World Airways, Inc., Allmat International, Inc., Pan Am Shuttle, Inc., Pan Am Express, Inc., Alert Management Systems, Inc., Pan Am Commercial Services, Inc., the Official Committee of Unsecured Creditors of Pan Am Corporation, et al., A.I. Leasing II, Inc., Air Line Pilots Association, International, Caterair International Corp., Electronic Services International, Inc., IBJ Schroder Bank & Trust Co., International Brotherhood of Teamsters, Midlantic National Bank,

while this complaint was pending.

MTU Maintenance GMbH, Ernest .L. Ransome, III, S.G. Warburg Soditic S.A., Transport Workers Union of America, AFL–CIO, United Technologies Corp., and Anthony Ben Walsh, Third–Party Defendants.

No. 92 civ. 1778 (RPP).

United States District Court, S.D. New York.

Aug. 20, 1993.

Davis, Polk & Wardwell by Dennis E. Glazer, John J. Clarke, Jr., New York City, for defendant and third-party plaintiff Delta Air Lines, Inc.

Varet, Marcus & Fink, P.C. by Arthur H. Ruegger, Richard Levy, Jr., New York City, for third-party defendants The Official Committee of Unsecured Creditors and Certain Individual Members.

Baker & McKenzie by Joseph Samet, Donald J. Kravet, New York City, for third-party defendant S.G. Warburg Soditic.

Wachtell, Lipton, Rosen & Katz by Amy R. Wolf, New York City, for third-party defendant United Technologies Corp.

## OPINION AND ORDER

ROBERT P. PATTERSON, Jr., District Judge.

Plaintiffs sued Delta Air Lines, Inc. ("Delta"), for lost wages, benefits, and other monetary losses under theories of breach of contract, breach of duty of good faith and fair dealing, promissory estoppel, and breach of fiduciary duty. Delta then impleaded the third-party defendants seeking "claim over/contribution" for any liabilities assessed against it in favor of the plaintiffs. On December 4, 1992, this Court granted a motion to dismiss Delta's third-party complaint against The Official Committee of Unsecured Creditors of Pan Am Corporation *et al.* (the "Committee") and the individual members thereof, but also gave Delta leave to replead. On January 26, 1993, Delta filed its First Amended Third–Party Complaint Against the Creditors' Committee Defendants ("Third–Party Compl."). The Committee and its individual members move to dismiss Delta's amended third-party complaint against them for failure to state a claim upon which relief may be granted. Third-party defendant S.G. Warburg Soditic S.A. ("Soditic") also makes a motion to dismiss the amended third-party complaint on the ground of improper service. For the reasons set forth below, the motions to dismiss are denied.

## BACKGROUND

This action arises out of failed efforts to reorganize an insolvent Pan Am Corporation and its affiliates ("Pan Am"). Plaintiffs are former Pan Am employees who allege that they were assured of positions with a reorganized Pan Am in the future but who lost their jobs when Pan Am ceased operations on December 4, 1991. Plaintiffs allege that Defendant Delta agreed to provide funding to Pan Am while it was in Chapter 11 proceedings and to support Pan Am's successor corporation once reorganization was complete, and that Delta's subsequent breach of those obligations to Pan Am caused Pan Am to cease operations. Plaintiffs bring their claims for lost wages, benefits, and out-of-pocket monetary damages both as intended third-party beneficiaries under the agreements between Pan Am and Delta and as persons "who otherwise relied on Delta's numerous representations of its commitment to Pan Am and to the plaintiffs." Compl. at ¶ 1.

On July 17, 1992, Delta filed a third-party complaint against Pan Am, the Committee, and the Committee's individual members, including A.I. Leasing II, Inc., Airline Pilots Association, International, Caterair International Corporation, Electronic Services International, Inc., IBJ Schroder Bank and Trust Company, International Brotherhood of Teamsters, Midlantic National Bank, MTU Maintenance GMBH, Ernest L. Ransome, III, S.G. Warburg Soditic S.A., Transport Workers Union of America, AFL–CIO, United Technologies Corporation, and Anthony Ben Walsh. This original third-party complaint asserted two claims: (1) against Pan Am for "claim over/contribution" and (2) against the Committee and its individual members for "claim over/contribution." Pan Am chose to answer the third-party complaint, but the Committee and its individual members moved for dismissal of the claim against them pursuant to Federal Rule of Civil Procedure 12(b)(6).

On December 4, 1992, this Court dismissed Delta's third-party complaint against the Committee and its members on the ground that Delta had failed to state a claim against any of these parties in either indemnification or contribution. Delta filed its amended third-party complaint on January 26, 1993.

Delta's amended third-party complaint asserts two claims against the Committee and its individual members, collectively— one for indemnification and one for contribution. Delta bases these claims upon the Committee's alleged actions with respect to the negotiation and performance of agreements central to the plaintiffs' allegations against Delta—i.e., the August 11, 1991, agreement whereby Delta purchased certain Pan Am assets in exchange for cash, the assumption of some liabilities, and the provision of debtor-in-possession financing, and the October 22, 1991, letter agreement whereby Delta pledged to provide additional debtor-in-possession financing under specified terms and conditions.

More specifically, Delta alleges that the Committee and its individual members, acting in concert, "thrust themselves into the center of the negotiating and contracting process" to such an extent that they "usurped the roles of Pan Am as the debtor-in-possession," and that the Committee and its members thereafter acted with Pan Am as "joint proponents of a proposed consolidated reorganization plan for Pan Am that was filed with the Bankruptcy Court on September 24, 1991 (as filed and as amended, the 'Joint Plan')," which contemplated, among other things, the preconfirmation completion of the transaction with Delta and the subsequent reorganization of Pan Am centered around its Miami hub. Third–Party Compl. at ¶¶ 23, 28, 32. Delta further alleges that the Committee nevertheless threatened to take actions that would interfere with the closing of the transaction with Delta and the reorganization of Pan Am unless Delta agreed to provide Pan Am with additional debtor-in-possession financing, which Delta subsequently agreed to provide pursuant to the terms of the October 22, 1991, letter agreement with the Committee and Pan Am. *Id.* at ¶¶ 33–39. After signing this agreement, the Committee and its members allegedly conducted themselves in a manner that un-

dermined the attempted reorganization. *Id.* at ¶¶ 41–44, 50–51.

According to Delta, the Committee and its members acted beyond the scope of their statutory duties and in breach of the duties they assumed as joint proponents of the Joint Plan, as central figures in the sale of Pan Am's assets, and as parties to the October 22, 1991, letter agreement with Delta by manipulating the reorganization process "without regard for the viability of a reorganized Pan Am or the feasibility of the proposed plan of reorganization" so as "to improve at any cost their potential recovery." *Id.* at ¶¶ 45, 49. Such conduct by the Committee and its members allegedly "had the effect of causing, in whole or in substantial part, Pan Am's inability to continue operations and to reorganize." *Id.* at ¶ 53.

## DISCUSSION

### I. MOTION TO DISMISS UNDER RULE 12(b)(6)

█ The Committee and its members move pursuant to Federal Rule of Civil Procedure 12(b)(6) for dismissal of the amended third-party complaint on the ground that it fails to state a claim upon which relief may be granted. The amended third-party complaint should not be dismissed under Rule 12(b)(6) for failure to state a claim unless it appears beyond doubt that Delta can prove no set of facts in support of its claim that would entitle it to relief. *See Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–102, 2 L.Ed.2d 80 (1957). When passing on a motion to dismiss, the court must accept the allegations in the complaint as true and construe them in favor of the pleader. *See Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974); *Cruz v. Beto,* 405 U.S. 319, 322, 92 S.Ct. 1079, 1081, 31 L.Ed.2d 263 (1972).

On this Rule 12(b)(6) motion, the Committee and its members challenge the sufficiency of the allegations supporting both the indemnification and contribution claims and also assert entitlement to immunity

and privilege protecting them against suit or liability for the conduct alleged.

### A. Sufficiency of Allegations Supporting Indemnification Claim

█ The right to indemnification, or to shift one's entire loss to another, "may be based upon an express contract or an implied obligation." *Bellevue South Assocs. v. HRH Constr. Corp.,* 78 N.Y.2d 282, 574 N.Y.S.2d 165, 171, 579 N.E.2d 195, 200 (1991). "Implied indemnity is a restitution concept which permits shifting the loss because to fail to do so would result in the unjust enrichment of one party at the expense of the other." *Mas v. Two Bridges Assocs.,* 75 N.Y.2d 680, 555 N.Y.S.2d 669, 674, 554 N.E.2d 1257, 1262 (1990). Courts have found implied indemnity appropriate "because of a separate duty owed the indemnitee by the indemnitor, or because one of two parties is considered actively negligent or the primary or principal wrongdoer." *Bellevue South Assocs.,* 574 N.Y.S.2d at 171, 579 N.E.2d at 201.

█ Delta asserts an entitlement to implied indemnification from the Committee and its members based on three main theories. The first two theories rest on separate duties allegedly owed the indemnitee by the indemnitors. First, Delta alleges in the amended third-party complaint that the Committee and its members owed Delta a duty of good faith and fair dealing under the letter agreement of October 22, 1991, but that the Committee and its members breached that duty by demanding renegotiation of the agreement in a letter dated November 4, 1991, which questioned the viability of the Joint Plan, and by leaking that letter to the press. Third–Party Compl. at ¶¶ 41–43, 62. Second, Delta contends that the Committee and its members owed a duty of good faith to Delta as proponents of the Joint Plan and that they breached this duty "by proposing the Joint Plan in bad faith and by taking actions which had the effect of undermining the Joint Plan." *Id.* at ¶ 64. By breaching these duties to Delta, the Committee and its members are alleged to have undertak-

en an obligation to indemnify Delta for any losses caused by such breach.[1]

Delta's third asserted basis for implied indemnification rests on an allegation that the Committee and its members are the primary or principal wrongdoers. In particular, Delta alleges that to the extent Plaintiffs are found to have rights as third-party beneficiaries against Delta with respect to contracts involving Delta, Pan Am, and the Committee, Plaintiffs have similar third-party beneficiary rights against the Committee and its members as joint promisors. *Id.* at ¶ 63. Delta further alleges that the actions of the Committee and its members "had the effect of causing, in whole or in substantial part, Pan Am's inability to continue operations and to reorganize," *id.* at ¶ 53, and thereby charges the Committee and its members with primary responsibility for the breach of any obligations owed to the plaintiffs as third-party beneficiaries.

The Committee and its members point out that "a party who has itself actually participated to some degree in the wrongdoing cannot receive the benefit of" indemnification. *Trustees of Columbia Univ. v. Mitchell/Giurgola Assocs.*, 109 A.D.2d 449, 492 N.Y.S.2d 371, 375 (1st Dep't, 1985); *accord Hoyt v. Kingsford,* 185 A.D.2d 770, 586 N.Y.S.2d 793, 794 (1st Dep't, 1992). They argue that each of the plaintiffs' claims against Delta requires a finding of misconduct on Delta's part, thus ensuring that Delta will seek indemnification only if found to be at fault for Plaintiffs' injuries. Plaintiffs' breach of contract claim against Delta does not, however, necessarily require a finding that Delta was at fault. The evidence could conceivably show that Delta breached obligations owed to the plaintiffs as third-party beneficiaries, but such breach resulted entirely from the wrongful conduct of the Commit-

tee and its members, who, according to Delta, are joint promisors. Under those circumstances, indemnification would not be foreclosed by Delta's misconduct.

Accordingly, Delta has stated a claim for indemnification against the Committee and its members.

## B. Sufficiency of Allegations Supporting Contribution Claim

▮ "Contribution enables a joint tortfeasor that has paid more than its equitable share of damages to recover the excess from the other tortfeasors." *Sommer v. Federal Signal Corp.,* 79 N.Y.2d 540, 583 N.Y.S.2d 957, 964, 593 N.E.2d 1365, 1372 (1992). A third-party claim for contribution on a tort claim exists where "the third-party defendant owed a duty to the plaintiff which was breached and which contributed to or aggravated plaintiff's damages." *Rosner v. Paley,* 65 N.Y.2d 736, 492 N.Y.S.2d 13, 14, 481 N.E.2d 553, 554 (1985). While contribution is usually predicated on breach of a duty owed to the plaintiff, a claim for contribution may also rest on breach of a duty owed by the third-party defendant to the third-party plaintiff. *Sommer,* 583 N.Y.S.2d at 966, 593 N.E.2d at 1374.

▮ In its first amended third-party complaint, Delta alleges that the Committee and its members assumed a fiduciary duty to Pan Am's employees, including the plaintiffs, when they "entered a relationship of special trust" with such employees by holding themselves out to be representing the interests of those employees and by usurping the role of the debtor-in-possession in negotiations and appearances before the Bankruptcy Court. Third–Party Compl. at ¶¶ 55, 56. Delta states a claim for contribution with the additional allegation that

---

**1.** The amended third-party complaint alleges that the Committee and its members "acted in concert" with respect to all allegations of misconduct. Third–Party Compl. at ¶ 23. More specifically, the amended third-party complaint states, "Each of the individual Committee Members had knowledge of, participated in and/or approved or ratified all of the actions taken by the Creditors' Committee Defendants alleged

herein." *Id.* Delta's pleading thus complies with the requirement that to state a claim for liability against the members of a Creditors' Committee, a party must allege that the individual members of the Committee were "personally involved" in the wrongful conduct charged. *See Prince v. Zazove,* 959 F.2d 1395, 1401 (7th Cir. 1992).

the Committee and its members breached this fiduciary duty to the plaintiffs "by their wrongful and manipulative conduct," and that such conduct "caused or substantially contributed to" Plaintiffs' injuries. *Id.* at ¶ 57.

Delta also states a claim for contribution by asserting that the Committee and its members "assumed a duty to all parties to the Pan Am reorganization cases, including the Plaintiffs, when the Creditors' Committee became a co-sponsor and continuing proponent of the Joint Plan," *id.* at ¶ 58, and that the Committee and its members breached this duty when they engaged in a pattern of wrongful conduct "with negative effects on Pan Am's viability, while at the same time continuing to propound the Joint Plan in bad faith." *Id.* at ¶ 59.

The Committee contends that because Delta bases its contribution claim on duties owed by the Committee and its members to employees of Pan Am as debtor-in-possession, and the plaintiffs bring their claims as prospective employees of Pan Am as a reorganized entity, the duties alleged in the amended third-party complaint cannot support Delta's claim for contribution. The short answer to the Committee's contention is that the plaintiffs bring their action as "persons employed by Pan Am or its unions as of December 3, 1991" who were also prospective employees of the reorganized entity. Compl. at ¶ 21.

█ Although, as both parties acknowledge, New York law does not permit contribution "between two parties whose potential liability to a third party is for economic loss resulting only from a breach of contract," *Board of Educ. v. Sargent, Webster, Crenshaw & Folley,* 71 N.Y.2d 21, 523 N.Y.S.2d 475, 476, 517 N.E.2d 1360, 1361 (1987), Delta's potential liability to the plaintiffs is alleged to arise from breach of

fiduciary duty as well as breach of contract. In cases where some of a plaintiff's claims against a defendant sound in contract and others sound in tort, contribution may be allowed on the tort claims. *Sommer,* 583 N.Y.S.2d at 965, 593 N.E.2d at 1373.

█ The Committee and its members argue that Plaintiffs' claim for breach of fiduciary duty is not sufficiently distinct from their breach of contract claim to constitute a basis for pleading contribution. Where the alleged tort does not arise from the breach of a legal duty independent of the contract, no claim for contribution for injuries resulting from the alleged tort will lie. *Id.,* 583 N.Y.S.2d at 961, 593 N.E.2d at 1369. The Complaint in this action alleges that Delta became a fiduciary with respect to the plaintiffs "through its actions and representations." Compl. at ¶ 108. Delta's "actions and representations" included active participation in the management of Pan Am, *id.* at ¶ 52, and direct representations to Pan Am's employees regarding Delta's role in ensuring employment with the reorganized entity. *Id.* at ¶ 53–55. The breach of fiduciary duty claim asserted by Plaintiffs against Delta thus allegedly arises from a duty independent of Delta's contracts with Pan Am and the Committee and, therefore, supports Delta's claim for contribution.

## C. Availability of Qualified Immunity

The Committee and its members assert entitlement to a qualified immunity from suit for acts committed within the scope of their statutory authority.[2] Delta disputes the existence of any such qualified immunity. Even assuming that the Committee and its members enjoy qualified immunity for conduct within the scope of their authority under the Bankruptcy Code, the

---

**2.** Creditors' committees derive their authority from 11 U.S.C. § 1103(c), which permits them to: "(1) consult with the trustee or debtor in possession concerning the administration of the case; (2) investigate the acts, conduct, assets, liabilities, and financial condition of the debtor, the operation of the debtor's business and the desirability of the continuance of such business, and any other matter relevant to the case or to

the formulation of a plan; (3) participate in the formulation of a plan, advise those represented by such committee of such committee's determinations as to any plan formulated, and collect and file with the court acceptances or rejections of a plan; (4) request the appointment of a trustee or examiner under section 1104 of this title; and (5) perform such other services as are in the interest of those represented."

allegations contained in the amended third-party complaint suffice to overcome such immunity.

### 1. Scope of the Alleged Immunity

■ Both parties rely primarily on the same three cases in determining whether, and to what extent, qualified immunity is available.[3] Although none of these cases actually granted immunity to a creditors' committee or its members, the Court in one case, *In re Drexel Burnham Lambert Group, Inc.*, 138 B.R. 717 (Bankr. S.D.N.Y.), *aff'd*, 140 B.R. 347 (S.D.N.Y. 1992), declared that the authority bestowed upon a Committee under § 1103(c)(3) of the Bankruptcy Code carries with it an implicit fiduciary duty to its constituents as well as " 'an implicit grant of limited immunity.' " *Id.* at 722 (quoting *In re Tucker Freight Lines, Inc.*, 62 B.R. 213, 216 (Bankr. W.D.Mich.1986)). The Court indicated the scope of this limited immunity when it denied an objection to a provision in a Joint Plan of Reorganization releasing members of the Equity Committee and the Committee's counsel "from any liability for actions taken in connection with the Debtors' reorganization, except claims arising from 'willful misconduct' " because the provision's "willful misconduct" standard struck "the proper balance between breach of duty and limited immunity." *Id.* at 718, 722.

The second case on which the parties rely is *Tucker Freight Lines.* In that case, the debtor's sole shareholder, who was also an unsecured creditor, brought suit against the representatives of certain individual members of the Creditors' Committee accusing them of disseminating an intentionally or recklessly false and misleading letter urging creditors to vote against the acceptance of the debtor's proposed plan of reorganization. *Tucker Freight Lines*, 62 B.R. at 215. The Bankruptcy Court held that "[f]or a Creditors' Committee to urge rejection of a plan for reasons they knew, or would have known but for their reckless-

ness, to be false would violate [the Committee's fiduciary] duty and deprive them of any limited immunity they might otherwise hold under § 1103(c)(3)." *Id.* at 216. The Bankruptcy Court further indicated generally that a creditors' committee may not have immunity for actions beyond the scope of the authority conferred upon it by the statute or the court. *Id.* at 217.

The third case which the parties discuss in relation to their arguments regarding the qualified immunity of creditors' committees is *In re Burstein–Applebee Co.*, 63 B.R. 1011 (Bankr.W.D.Mo.1986). The Bankruptcy Court in that case permanently enjoined a state court action instituted against a creditors' committee for defamation and tortious interference with contractual relations. The Bankruptcy Court found the injunction necessary in order to enforce the "privilege" available to the Committee "under the state law" when all of the transgressions alleged in the state court action took place during the pendency of the underlying chapter 11 proceedings and were accomplished in the course of "the good faith carrying out of the duties of the officers of the estate." *Id.* at 1019. Unlike the qualified immunity claimed by the Committee and its members in this action, the "privilege" recognized by the *Burstein–Applebee* Court does not arise under federal bankruptcy law; rather, it is rooted in state law and appears somewhat akin to the privilege recognized under New York law, and discussed in a subsequent section of this Opinion and Order, for statements made in the course of judicial proceedings. *Burstein–Applebee* thus fails to provide instruction on the extent to which federal bankruptcy law entitles creditors' committees and their members to qualified immunity.

Based upon this case law concerning the qualified immunity of creditors' committees and their members, any such immunity must be limited to actions taken within the

---

**3.** The only express grant of immunity to creditors' committees and their members in the Bankruptcy Code is 11 U.S.C. § 1125(e), which confers immunity from liability for violations of securities laws upon anyone who "in good faith" solicits acceptance or rejection of a plan. The parties agree that this provision does not apply to the claims brought by Delta against the Committee and its members.

scope of the committee's authority as conferred by statute or the court and may not extend to "willful misconduct" of the committee or its members.[4]

## 2. Sufficiency of Allegations for Overcoming Immunity

### a. Pleading standard

■ The Committee and its members contend that a "heightened pleading standard" is imposed on claims against persons clothed with potential qualified immunity. This contention rests upon the argument that the same pleading standard should apply with respect to claims against creditors' committees as applies with respect to claims against officials performing core governmental functions.

That a heightened pleading standard is required to state a claim against officials performing governmental functions is not, however, settled law. Recently, the Supreme Court in *Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit*, — U.S. —, —, 113 S.Ct. 1160, 1162, 122 L.Ed.2d 517 (1993), explicitly left open the question of "whether our qualified immunity jurisprudence would require a heightened pleading in cases involving individual government officials." The Court further displayed a distinct reluctance to impose a particularity requirement beyond the two specific instances already subject to such a requirement under Federal Rule of Civil Procedure 9(b). *Id.* at —, 113 S.Ct. at 1163.

The Second Circuit case cited by the Committee, *Barr v. Abrams*, 810 F.2d 358 (2d Cir.1987), does not install a "heightened pleading standard" for lifting the qualified

immunity of government officials. It merely states that "complaints relying on the civil rights statutes are insufficient unless they contain some specific allegations of fact indicating a deprivation of rights, instead of a litany of general conclusions that shock but have no meaning." *Id.* at 363. The notice pleading standard set forth in Federal Rule of Civil Procedure 8(a) requires no less.

Even if a heightened pleading standard is required in actions brought against officials performing core governmental functions, the Supreme Court's expressed preference in *Leatherman* for limiting stringent pleading requirements to situations contemplated by the Federal Rules of Civil Procedure indicates that the heightened standard is unlikely to be extended to actions brought against persons, such as the Committee and its members, appointed by government officials to look after their own private interests and the interests of those who are similarly situated. The adequacy of Delta's allegations to lift the qualified immunity claimed by the Committee and its members will therefore be assessed under the notice pleading standard of Rule 8(a).

### b. Delta's allegations

■ Delta's amended third-party complaint contains factual allegations supporting its claim that the Committee and its members "intentionally acted improperly and beyond [the Committee's] statutory duties." Third–Party Compl. at ¶ 49. In particular, Delta alleges that the Committee and its members "took over" negotiations for the sale of Pan Am's assets, often

**4.** In two adversary proceedings in the Bankruptcy Court that are related this action, Judge Blackshear ruled from the bench on a motion to dismiss similar charges brought by Delta against the Committee and its members. Judge Blackshear denied the motion to dismiss each action against the Committee as a whole because he found that the Committee does not have "immunity as a public official," but dismissed each action against the individual Committee members "for public policy." *See* Transcript, dated Nov. 5, 1992, at 42–43 for *In re Pan Am Corp.* (Ch. 11 Case No. 91 B 10080, Adv. Proc. Nos. 91–6626A (CB), 91–6684A (CB)). Although the

"public policy" underlying the Bankruptcy Judge's dismissal of Delta's claims against the Committee's members was not articulated, it is respectfully submitted that public policy counsels against a blanket grant of immunity for Committee members because such immunity would dissuade future lenders and others from entering into contractual arrangements with creditors' committees. Moreover, the absence of immunity is unlikely to discourage creditors from volunteering for committees in view of creditors' economic incentives to increase recovery on their claims.

excluding Pan Am, and thereby "usurped the roles of Pan Am as the debtor-in-possession." *Id.* at ¶ 28. Delta also charges that the Committee and its members attempted to force Delta to provide additional financing to Pan Am by threatening to support a motion by the United States Air Force to foreclose on Pan Am's receivables in which the Air Force had a security interest despite the negative impact which foreclosure would have had upon the interests of general unsecured creditors, whom the Committee represents. *Id.* at ¶¶ 35-37. Delta further accuses "one or more of the Creditors' Committee Defendants" of "intentionally leak[ing]" to the press a November 4, 1991, letter from the Committee's counsel to Delta and Delta's counsel which predicted that the reorganization plan for Pan Am "cannot or will not be confirmed" and blamed Delta for the probable failure of the proposed reorganization. *Id.* at ¶¶ 41-43, Exh. B. Accordingly, Delta's allegations against the Committee and its members describe "willful misconduct" and other *ultra vires* actions and therefore suffice to lift any qualified immunity from suit which the Committee and its members may enjoy.

### D. Availability of Privilege for Statements Arising in the Course of Judicial Proceedings

█ The Committee and its members contend that their alleged conduct is privileged under New York's "absolute privilege" for "statements that arise in the course of a judicial proceeding, and are relevant and pertinent thereto." *Weissman v. Hassett*, 47 B.R. 462, 468 (S.D.N.Y. 1985). Delta asserts that this privilege applies only in actions for defamation, malicious prosecution, and related claims. The Committee disagrees but fails to cite a single case decided under New York law in which this privilege has been applied in the context of an action not sounding in either defamation or malicious prosecution.

The restriction of this privilege to actions sounding in defamation or malicious prosecution comports with the privilege's underlying purpose, which is to encourage parties to judicial proceedings to "speak freely." *Id.* at 469. As stated by the New York Court of Appeals, the privilege reflects a policy determination that "the perceived social benefit in encouraging free speech or the discharge of governmental responsibility ... outweighs the individual's underlying right to a good reputation." *Park Knoll Assocs. v. Schmidt*, 59 N.Y.2d 205, 464 N.Y.S.2d 424, 426, 451 N.E.2d 182, 184 (1983).

Because Delta's amended third-party complaint does not sound in defamation or malicious prosecution, the alleged conduct of the Committee and its members is not protected by the privilege for statements arising in the course of judicial proceedings. The motion to dismiss the first amended third-party complaint for failure to state a claim upon which relief may be granted is therefore denied.

## II. MOTION TO DISMISS UNDER RULE 12(b)(5)

█ Third-party defendant Soditic, an entity domiciled in Switzerland without a place of business in the United States, moves under Federal Rule of Civil Procedure 12(b)(5) to dismiss the amended third-party complaint against it for insufficiency of service of process. Delta did not serve the amended third-party complaint upon Soditic in Switzerland, but instead served it upon the law firm of Baker & McKenzie, who represent Soditic in the Pan Am Chapter 11 proceedings. Soditic contends that service upon Baker & McKenzie did not comply with Federal Rule of Civil Procedure 4(d)(3), which provides that service upon a domestic or foreign corporation, partnership, or other unincorporated association which is subject to suit under a common name shall be made "by delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or to any other agent authorized by appointment or by law to receive service of process."

Delta asserts that service upon Baker & McKenzie was proper because Soditic implicitly authorized Baker & McKenzie to act as its agent for that purpose. "An

agent's authority to accept process on the corporation's behalf may be implicit or explicit." *In re Reisman,* 139 B.R. 797, 800 (Bankr.S.D.N.Y.1992). Courts in New York are "reluctant to lightly imply such an agency." *Olympus Corp. v. Dealer Sales & Serv., Inc.,* 107 F.R.D. 300, 305 (E.D.N.Y.1985). If such an agency is to be implied, "it must be implied from all the circumstances accompanying the attorney's appointment which indicate the extent of authority the client intended to confer." *United States v. Bosurgi,* 343 F.Supp. 815, 818 (S.D.N.Y.1972) (Weinfeld, J.).

Applying this test, the Bankruptcy Court for the Southern District of New York has held that "[w]hen a defendant takes an active role in a Chapter 11 case and appears through counsel in a proceeding integrally related to the case, such counsel is implicitly authorized to receive process for the defendant[ ]." *Reisman,* 139 B.R. at 801 (citing *In re Paddington Press, Ltd.,* 5 B.R. 343, 345 (Bankr.S.D.N.Y.1980)). In *Reisman,* the Court found that a creditor of the debtor had implicitly authorized its attorney to accept service of process on its behalf in an "integrally related" adversary proceeding because the attorney had taken an "active role" in the chapter 11 proceedings by filing a Notice of Appearance, moving to convert the chapter 11 case into a chapter 7 case, and making an application to examine the debtor. *Id.* In *Paddington Press,* the Court similarly found that parties to a chapter 11 proceeding had impliedly granted their counsel authorization to receive service on their behalf in an adversary proceeding "integrally related" to the chapter 11 case by authorizing counsel to take "a most active part in opposing" an application of the debtor at a hearing in the chapter 11 case. *Paddington Press,* 5 B.R. at 345.

Soditic attempts to distinguish *Reisman* and *Paddington Press* from this matter on two grounds. First, Soditic points out that Delta is asking for a determination that Soditic's activities through its counsel in the chapter 11 proceedings in Bankruptcy Court implicitly authorized such counsel to accept service in this Court, whereas the

holdings in *Reisman* and *Paddington Press* involved only separate bankruptcy court cases. An attorney's activities on behalf of a client in proceedings in one court may indicate implied authority to receive service of process in integrally related litigation in another court. *See, e.g., Bosurgi,* 343 F.Supp. at 818 (attorneys' representation of party in state court action impliedly authorized those attorneys to receive service of process in federal action). Moreover, Delta's claims against Soditic in this action are so "integrally related" to the Pan Am chapter 11 proceedings that the very same claims have been asserted in adversary proceedings in the bankruptcy court.

Soditic also attempts to distinguish this matter from *Reisman* and *Paddington Press* because here, Soditic participated in the chapter 11 proceedings only as a member of the Committee and not as an independent party of record. This distinction makes no difference. Soditic was not just a passive member of the Committee; rather, through Baker & McKenzie, it attended Committee meetings, participated on the "New Plan Sub–Committee," commented on and requested amendments to the plan of reorganization, and reviewed and commented on the complaint filed by Pan Am against Delta in an adversary proceeding presenting issues nearly identical to those presented in the amended third-party complaint in this action. Declaration of Dennis E. Glazer, dated Apr. 8, 1993, Exhs. C, D, E, J. The active role played by Soditic through Baker & McKenzie in the Pan Am chapter 11 proceedings impliedly authorized Baker & McKenzie to accept service of process on Soditic's behalf in this action, which is integrally related to the chapter 11 case.

Accordingly, Soditic's motion to dismiss for insufficiency of service of process is denied.

### CONCLUSION

For the reasons set forth above, the motions to dismiss brought by the Committee, Soditic, and the Committee's other individual members are denied. The parties are

ordered to attend a conference in Room 302 at 9:00 a.m. on September 10, 1993, to discuss a schedule for trial.

IT IS SO ORDERED.