In re L.F. ROTHSCHILD HOLDINGS, INC. and L.F. Rothschild & Co. Incorporated, Debtors.

Martin H. PHILIP and Marie L. Sander, as Trustees Under a Deed of Trust dated January 4, 1982 F/B/O Thomas Hadesty and Patricia Hadesty, Individually, and on behalf of all other debentureholders similarly situated, Plaintiffs–Appellants,

v.

L.F. ROTHSCHILD HOLDINGS, INC., Debtor–Appellee.

No. 92 Civ. 4370 (SWK). Bankruptcy Nos. 89 B 11598 (BRL), 91 B 10055 (BRL).

United States District Court, S.D. New York.

Jan. 4, 1994.

See also 143 B.R. 335.

Law Offices of Curtis V. Trinko by Curtis V. Trinko, New York City, for plaintiffs-appellants.

Cleary, Gottlieb, Steen & Hamilton by Thomas J. Moloney, New York City, for debtor-appellee.

### MEMORANDUM OPINION AND ORDER

KRAM, District Judge.

This action appeals an order issued on April 15, 1992 (the "Order") by Judge Burton R. Lifland of the United States Bankruptcy Court, Southern District of New York (the "Bankruptcy Court"), confirming the First Amended Plan of Reorganization of L.F. Rothschild Holdings (the "Amended Plan"). Specifically, plaintiffs-appellants appeal from that portion of the Order which releases Morgan Guaranty Trust Company of New York ("Morgan Guaranty") from any liability that might have attached to it as a member of the Official Committee of Unsecured Creditors. For the reasons set forth below, the Court affirms.

## BACKGROUND [1]

### I. Holdings' Financial Condition

Plaintiffs-appellants Martin H. Philip and Marie L. Sander are trustees under a deed of trust dated January 4, 1982, which owns 7% Convertible Subordinated Debentures due 2011 (the "7% Debentures") issued by L.F. Rothschild Holdings, Inc. ("Holdings"). Holdings is a Delaware corporation that was incorporated in 1985 to conduct investment banking and retail brokerage services through its subsidiary, L.F. Rothschild & Co. Incorporated ("LFR"), a registered broker-dealer. In the regular course of business, Holdings sold the 7% Debentures to the investing public, pursuant to an indenture dated May 15, 1986 (the "Indenture"), as supple-

mented. The Indenture designated Morgan Guaranty as trustee for the 7% Debentures.

Beginning in October 1987, Holdings' financial condition deteriorated, and it sought to locate possible purchasers for all or a portion of its business. On February 22, 1988, Holdings and Franklin Financial Services ("FFS"), a wholly-owned subsidiary of Franklin Savings Association ("FSA"), executed a letter of intent providing for the acquisition of Holdings by FFS. Pursuant to the negotiations, FFS agreed to make a $30 million subordinated loan to LFR. In addition, during the tender offer to effectuate the merger, FSA publicly committed itself to make up to $55 million subordinated loans to LFR. Subsequently, on April 12, 1988, Holdings, LFR, FFS and LFR Acquisition Company entered into the merger agreement (the "1988 Merger Transaction"). Although the initial subordinated loan of $30 million was made to LFR, FSA did not advance the remaining $25 million of the $55 million subordinated loan commitment.

Holdings' financial condition continued to worsen. As a result, Holdings failed to make interest payments to the holders of the 7% Debentures. On May 19, 1989 and June 14, 1989, Morgan Guaranty, as Indenture trustee, issued Notices of an Event of Default to all debentureholders. Subsequently, on June 30, 1989, Holdings filed a petition for reorganization under Chapter 11, Title 11 of the United States Code (the "Bankruptcy Code").[2] On July 14, 1989, the Official Committee of Unsecured Creditors (the "Committee") was appointed by the United States Trustee, pursuant to Bankruptcy Code section 1102. Morgan Guaranty was appointed as a member of the Committee, along with indenture trustees for Holdings' other series of issued debt securities. Thereafter, on December 15, 1989, Holdings entered into an agreement with the Committee (the "Creditors' Agreement"), setting forth the general terms that were to have formed the basis of

---

1. The following facts are taken from the complaint in a related action entitled *Philip v. L.F. Rothschild & Co.*, 90 Civ. 0708 (MJL), the Memorandum of Law in Support of Plaintiffs'–Appellants' Appeal from Order from Bankruptcy Court, and the Brief of Debtor–Appellee L.F. Rothschild Holdings, Inc.

2. On January 4, 1991, LFR also filed a voluntary petition for reorganization under Chapter 11 of the Bankruptcy Code. Subsequently, the Bankruptcy Court procedurally consolidated the two bankruptcy proceedings.

any plan of reorganization. Work on the drafting of a plan of reorganization then commenced and culminated in an initial draft (the "Initial Draft Plan").

On February 16, 1990, the United States Office of Thrift Supervision appointed the Resolution Trust Corporation ("RTC") as conservator of FSA, and the RTC took control over the operations of FSA. The RTC reconstituted Holdings' board of directors and initiated further discussions with the Committee to revise the general terms of the plan of reorganization from those set forth in the Creditors' Agreement. These discussions culminated in Holdings' First Amended Plan of Reorganization (the "Amended Plan").

## II. Plaintiffs–Appellants Class Action Suit

In February 1990, plaintiffs-appellants filed a class action complaint in this Court against, *inter alia*, Morgan Guaranty.[3] The *Philip* action seeks to recover damages suffered as a result of alleged violations of the federal securities laws for misrepresentations of material facts, common law breach of fiduciary duties and state law claims for fraudulent conveyance.[4]

With respect to Morgan Guaranty, the amended complaint alleges that Morgan Guaranty breached its fiduciary duties by failing to perform adequate due diligence with respect to the impact of the 1988 Merger Transaction "and the various exchange offerings attendant thereto" upon the financial interests of debentureholders. *See* Amended Class Action Complaint at ¶ 101, annexed to the Objections of Holders of 7%

Convertible Subordinated Debentures to the First Amended Plan of Reorganization Proposed by L.F. Rothschild Holdings, Inc. (the "Objections") as Exh. "A." The amended complaint also alleges that Morgan Guaranty, as Indenture trustee, failed to take further action with respect to the two notices of default issued prior to Holdings' bankruptcy filing. Finally, the amended complaint alleges that Morgan Guaranty acted with gross negligence or recklessness as a member of the Committee by failing to discern the true financial condition of FSA before recommending that the unsecured bondholders vote in favor of the Initial Draft Plan.

## III. Objections to the Amended Plan

On April 6, 1992, plaintiffs-appellants filed written Objections to the Amended Plan with the Bankruptcy Court. Among other things, plaintiffs-appellants objected to Article VIII of the Amended Plan, which releases Morgan Guaranty from liability in its capacity as a member of the Committee.[5] According to plaintiffs-appellants,

> Morgan Guaranty, as set forth in the Class Action Complaint in the Southern District of New York, acted with gross negligence or recklessness and therefore Objectants and the class have been damaged. Obviously, any releases with regard to Morgan Guaranty emanating from these [bankruptcy] proceedings ... would be prejudicial and therefore Objectants request that this Court not confirm the portion of the Amended Plan which would allow Morgan Guaranty to escape liability for their actions as Indenture Trustee during the pen-

---

3. The class action, entitled *Philip v. L.F. Rothschild & Co.*, 90 Civ. 0708 (MJL) (the *"Philip* action"), was placed on the suspense docket by Judge Mary Johnson Lowe, pending the disposition of Holdings' bankruptcy petition. Holdings was not named as a defendant in the *Philip* action, however, because of the automatic stay attendant to its bankruptcy proceeding.

4. An amended complaint was filed on March 30, 1990, retaining a cause of action against Morgan Guaranty for breach of fiduciary duties.

5. Specifically, Article VIII of the Amended Plan provides that, subject to certain exceptions, claims against Holdings, FFS, the Committee

and each member thereof are fully released and forever discharged. One of the exceptions to this release language provides that:

> The foregoing notwithstanding, the following claims shall be preserved: ... (4) the Claims of the plaintiffs in an action entitled *Philip and Sander v. L.F. Rothschild & Co. Incorporated, et al.*, Civil Action Number 90 Civ. 0708 (MJL) against all defendants other than Holdings, LFR and Morgan Guaranty Trust Company of New York, as Indenture Trustee, solely in its capacity as a member of the Creditors' Committee.

dency of [bankruptcy] proceedings and the negotiation of the Reorganization Plan.

*See* Objections at ¶ 2(A) (citations omitted).

Holdings responded to the Objections on April 13, 1992. In its response, Holdings contends that the release language is appropriate as it does not release Morgan Guaranty from liability in its capacity as Indenture trustee, but solely in its capacity as a Committee member. Holdings claims further that "[t]he release language in the Plan is intentionally limited so as not to prejudice the pursuit by the Objectors of any other valid causes of action against Morgan." *See* Debtor's Response to Objections of Holders of 7% Convertible Subordinated Debentures to the First Amended Plan of Reorganization Proposed by L.F. Rothschild Holdings, Inc. at ¶ 1.

### IV. Bankruptcy Court Ruling

The Bankruptcy Court denied plaintiffs'-appellants' Objections at a hearing conducted on April 15, 1992. Specifically, the Bankruptcy Court found that the release provision left intact any causes of action against Morgan Guaranty in its capacity as Indenture trustee, stating that "[c]learly the main thrust of this is to preserve whatever rights your clients may have against Morgan in connection with their fiduciary obligations to your clients. That is being preserved...." *See* transcript of April 15, 1992 hearing ("Transcript") at 12. As to the claims against Morgan Guaranty as a Committee member, the Bankruptcy Court found that plaintiffs-appellants had failed to set forth more than mere conclusory allegations. The Bankruptcy Court stated that "[m]erely making the allegation that there's been some breach of fiduciary obligation in no way suggests that your motion in this regard has any currency whatever." *Id.* at 11–12. Accordingly, the Bankruptcy Court concluded that "with respect to [Morgan Guaranty's] activities as [a] member[ ] of the Creditor's Committee, there is no basis at all to give credence to [plaintiffs'-appellants'] objection." *Id.* at 12. After a full evidentiary hearing, the Bankruptcy Court determined that the Debtor had met the requirements, pursuant to Bankruptcy Code § 1129, for confirmation

of the Amended Plan, *see id.* at 28, and issued an order approving the Plan.

### ARGUMENT

### I. Standard of Review

■ This Court has jurisdiction to hear appeals from final judgments of bankruptcy judges, pursuant to 28 U.S.C. § 158(a).

On an appeal the district court or bankruptcy appellate panel may affirm, modify, or reverse a bankruptcy judge's judgment, order, or decree or remand with instructions for further proceedings. Findings of fact, whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the bankruptcy court to judge the credibility of the witnesses.

Bankruptcy Rule 8013. The Court thus will review findings of fact under a clearly erroneous standard, and conclusions of law *de novo. In re Ionosphere Clubs, Inc.*, 922 F.2d 984, 988–989 (2d Cir.1990), *cert. denied,* —— U.S. ——, 112 S.Ct. 50, 116 L.Ed.2d 28 (1991). With respect to findings of fact, "[w]e will reverse the bankruptcy court only if we are 'left with the definite and firm conviction that a mistake has been committed.'" *In re Manville Forest Prods. Corp.*, 896 F.2d 1384, 1388 (2d Cir.1990) (quoting *United States v. United States Gypsum Co.*, 333 U.S. 364, 395, 68 S.Ct. 525, 541, 92 L.Ed. 746 (1948)).

### II. Appeal from the Bankruptcy Court's Decision

■ Plaintiffs-appellants contend that the Order confirming the Amended Plan impairs their right to recover on the claims asserted against Morgan Guaranty in the *Philip* action. Specifically, plaintiffs-appellants assert that they will be unable to recover on their claims against Morgan Guaranty for breach of fiduciary duties with respect to Morgan Guaranty's failure to: (1) perform adequate due diligence concerning the impact of the 1988 Merger Transaction on the financial interests of debentureholders; (2) take further action with respect to the notices of default issued prior to Holdings' bankruptcy

 

filing; and (3) discern the true financial condition of FSA before recommending that the unsecured bondholders vote in favor of the Initial Draft Plan.[6]

█ As a threshold matter, the Court finds that Morgan Guaranty, in its capacity as a member of the Committee, has a right to limited immunity from suit. *See In re Drexel Burnham Lambert Group, Inc.*, 138 B.R. 717, 722 (S.D.N.Y.1992). "The Bankruptcy Code 'contemplates a significant and central role for committees in the scheme of a business reorganization.'" *Id.* (quoting *In re Penn–Dixie Indus., Inc.*, 9 B.R. 941, 944 (S.D.N.Y.1981)). This broad scope of authority is set forth in section 1103(c)(3) of the Code, which provides that official committees are empowered to "participate in the formulation of a plan, advise those represented by such committee of such committee's determination as to any plan formulated, . . . ." Bankruptcy Code § 1103(c)(3). This implies both a fiduciary duty to committee constituents, and a grant of limited immunity to committee members. *Id.; see also In re Tucker Freight Lines, Inc.*, 62 B.R. 213, 218 (W.D.Mich.1986). Nevertheless, "any such immunity must be limited to actions taken within the scope of the committee's authority as conferred by statute or the court and may not extend to 'willful misconduct' of the committee or its members." *Luedke v. Delta Air Lines, Inc.*, 159 B.R. 385, 392–93 (S.D.N.Y. 1993).

█ While the release provision set forth in the Amended Plan does not provide expressly for claims of willful misconduct against Morgan Guaranty in its capacity as a Committee member, the Court finds that the Bankruptcy Court was not clearly erroneous in approving the release provision as written. In fact, plaintiffs-appellants have set forth no more than conclusory allegations that Morgan Guaranty breached its fiduciary duties as a Committee member. Plaintiffs'-appellants' claims with respect to the 1988 Merger Transaction and the notices of default relate

to Morgan Guaranty's activities as Indenture trustee, and do not concern Morgan Guaranty's appointment to the Committee. Accordingly, these claims are preserved under the Amended Plan. Moreover, with respect to Morgan Guaranty's alleged failure to discern the true financial condition of FSA before recommending the Initial Draft Plan, the Court finds this claim to be without merit as it relates to a draft plan that was neither put before the bondholders for a vote, nor confirmed by the Bankruptcy Court. Accordingly, the Court finds that the Bankruptcy Court did not err in confirming the Amended Plan, despite the existence of causes of action against Morgan Guaranty in the *Philip* case.

## CONCLUSION

For the reasons set forth above, the order of the Bankruptcy Court confirming the Amended Plan is hereby affirmed.

SO ORDERED.

---

6. Plaintiffs-appellants also contend, for the first time on appeal, that Morgan Guaranty breached its fiduciary obligations to Committee constituents by negotiating the terms of the Amended Plan to ensure its release from liability as a

member of the Committee. As this claim was not raised below and, as a result, the Bankruptcy Court did not rule on it, the Court does not have jurisdiction to consider this claim on appeal. *See* 28 U.S.C. § 158(a).