In re ENVIRODYNE INDUSTRIES,
INC., et al., Debtors.

Bankruptcy Nos. 93 B 310, 93 B 312,
93 B 316, 93 B 318 and 93 B 319.

United States Bankruptcy Court,
N.D. Illinois,
Eastern Division.

Sept. 26, 1994.

Allan S. Brilliant of Holleb & Coff, Chicago, IL, for debtors.

James E. Spiotto and Steven E. Garcia (local counsel) of Chapman & Cutler, Chicago, IL, Edwin G. Schallert and Steven R. Gross of Debevoise & Plimpton, New York City, for Official Committee of Bondholders.

## *MEMORANDUM OF DECISION:*

## THE MOTION FOR ENTRY OF AN ORDER RELEASING AND DISCHARGING THE MEMBERS OF AND PROFESSIONALS TO THE OFFICIAL BONDHOLDERS' COMMITTEE

JOHN D. SCHWARTZ, Chief Judge.

### I. Introduction

On November 8, 1993, the confirmation hearing on the Debtors' First Amended Plan of Reorganization as Twice Modified ("Plan") commenced. On that day, the Official Committee of Bondholders of Envirodyne Industries, Inc. ("Official Bondholders' Committee") filed a motion ("Limited Release Mo-

tion") seeking an order directing the Debtors to incorporate the following provision into the confirmation order, if one were to issue:

releasing and discharging the members of the [Official] Bondholders' Committee and its professionals from known and unknown claims of any nature that *any creditor or equity security holder of the Debtors has, had or may have* against the [Official] Bondholders' Committee and its respective present and former members and professionals, other than the claims that arise after the effective date of the [Plan] or claims that do not arise from a relationship of the applicable released entity to the [Official] Bondholders' Committee. (emphasis added.) [1]

Alternatively, the Official Bondholders' Committee asks this court to retain jurisdiction to hear and determine any claims, rights or causes of action asserted against the parties it sought to release and to liquidate, if necessary, any claims asserted against these parties for acts or omissions related to the Debtors' bankruptcy cases.

At the time the Limited Release Motion was filed, a lawsuit was pending in the United States District Court for the Southern District of New York entitled *M.D. Sass Re/Enterprise Partners, L.P., et al. v. Cargill Financial Services, et al.*, No. 93 Civ. 7414 (S.D.N.Y. filed Oct. 27, 1993).[2] In this lawsuit, two members of the Official Bondholders' Committee, joined by two non-members, alleged that other members of the Official Bondholders' Committee breached their fiduciary duties as committee members.

The plaintiffs in that suit were members of the unofficial committee composed of 13½% noteholders ("Unofficial 13½% Noteholders' Committee") in the above captioned bankruptcy proceeding. The Unofficial 13½% Noteholders' Committee was one of the parties objecting to the Plan and it filed a response objecting to the Limited Release Motion. The response stated that the eve of a contested confirmation hearing was not the appropriate time to, in effect, seek a modification of the plan of reorganization. Additionally, the Unofficial 13½% Noteholders' Committee stated that it was not then in a position to conduct discovery or to research and brief the issues presented by the Limited Release Motion. It requested more time in order to fully investigate the matter and brief the issues.

The court agreed that the eve of the confirmation hearing was not the proper time to consider the Limited Release Motion as it would materially change the Plan and thus, violate the modification procedures of § 1127.[3] The Plan had already been described in an approved disclosure statement and two approved supplements thereto which were sent to the creditors, and the Plan had been voted upon and the results tallied. Furthermore, the parties in interest who planned to appear at the confirmation hearing had already prepared and submitted exhibits and other materials for the hearing and were not prepared for the Limited Release issue. Based on the schedule the court had set, it would have been an imposition on

1. On November 8th, the Debtors orally stated that they joined in the motion. *See* the November 8, 1993 Transcript of the Proceedings at 10.

2. Subsequent to the filing of the Limited Release Motion, venue for the lawsuit was changed to the Northern District of Illinois and then voluntarily dismissed. The dismissal occurred before an answer was filed, so the parties agree that, in theory, the suit could be brought again until the period prescribed by the appropriate statute of limitations expires.

3. Unless otherwise indicated, all section references are to the Bankruptcy Code (codified in 11 U.S.C.).

Section 1127(a) provides, in relevant part, that "the proponent of a plan may modify such plan at any time before confirmation, but may not modify such plan so that such plan as modified fails to meet the requirements of sections 1122 and 1123 of this title." Section 1127(c) provides that "the proponent of a modification shall comply with section 1125 of this title with respect to the plan as modified."

Section 1125(c) requires that an approved disclosure statement and a copy of the proposed plan or a summary of such plan be submitted to an holder of a claim before that holder's acceptance or rejection of a proposed plan is solicited. Hence, modifying the plan to include the Limited Release would have necessitated the sending of an approved supplement to the disclosure statement to those affected by the Limited Release. Since the Limited Release seeks a waiver from "all creditors," all of the creditors of record would have to have been re-solicited.

all of the parties to delay the hearing to allow yet another modification of the Plan and vote. Neither the Debtors nor the Official Bondholders' Committee requested such a delay.[4] The court decided to address the Limited Release Motion as a matter separate from the confirmation of the Plan and consider the motion after the close of the hearing. A briefing schedule was established giving those who received notice sufficient time to respond.[5]

The confirmation hearing ended on November 30, 1993. On December 8, 1993, after the confirmation hearing, but before the issuing of the court's findings of fact and conclusions of law and order of confirmation, the Debtors filed a written joinder supporting the issuing of a release to the extent that the Plan was confirmed. The release language the Debtors sought was that the court enter an order:

> releasing, waiving, and discharging all known and unknown claims of any nature that *any creditor or equity security holder has, had or may have* against the [Official] Bondholders' Committee Members and the [Official] Bondholders' Committee Professionals and their respective agents and former stockholders, members, directors, officers, employees, agents, attorneys, accountants, investment bankers, financial advisors, and other representatives, other than claims that arise after the Effective Date of the [the Plan] or claims that did not arise from a relationship of the applicable released entity to the Official Bondholders' Committee Members and the [Official] Bondholders' Committee Professionals (the "Limited Release"). (emphasis added)[6]

The Debtors also asked that the Limited Release be expanded to include the "Trade Committee Members" and "Trade Committee Professionals" and emphasized that the Limited Release would exclude claims for "willful misconduct." In addition, the Debtors sought an order discharging the duties and responsibilities of the Bondholders' Committee.

Also on December 8th, the United States Trustee filed a response to the Limited Release Motion which expressed its concern regarding the issuing of the Limited Release. On the same date, the Unofficial 13½% Noteholders' Committee filed a supplemental response which stated that the Limited Release Motion should be denied for various substantive and procedural reasons. Additionally, the Official Bondholders' Committee filed a supplemental memorandum on that date which further supported the Limited Release Motion and which, among other issues, addressed some concerns allegedly raised by the Securities & Exchange Commission about the scope of the proposed Limited Release.[7]

On December 13, 1993, the court conducted a hearing on the Limited Release Motion and requested additional briefs addressing the history of creditors' committees as the court felt that this history could be of some guidance. Also, on December 13th, the court entered its Memorandum Opinion for Hearing on Confirmation of Debtors' First Amended Joint Plan of Reorganization as Twice Modified ("Memorandum Opinion") concurrently with its Findings of Fact and Conclusions of Law for Hearing on Confirmation of Debtors' First Amended Joint Plan of Reorganization as Twice Modified ("Findings and Conclusions").[8] The court found

4. As discussed below, the court finds that the Limited Release affects all of the creditors of Envirodyne and that the Limited Release, as written, should have been part of the proposed Plan of reorganization for disclosure and voting purposes.

5. As discussed below, the court also has serious reservations about the notice given for the Limited Release Motion.

6. Hereinafter, the proposed orders seeking to release the official committees, their members, and their professionals are referred to as the

"Limited Release." The parties sought to be released are generally referred to as the "Released Parties." The term "Limited Release Motion" is deemed to also include the relief sought in the Debtors' joinder.

7. The SEC did not file any formal response to the Limited Release Motion.

8. *See In re Envirodyne Industries, Inc., et al. (Memorandum Opinion for Hearing on Confirmation of Debtors' First Amended Plan of Reorganization as Twice Modified)*, 1993 WL 566566 (Bankr.N.D.Ill. Dec. 13, 1993); *In re Envirodyne*

that it would confirm the Plan if the Debtors made some nonmaterial modifications to it. The court subsequently approved the Debtors' nonmaterial alterations to the Plan.[9] On December 17, 1993, the court entered Order No. 164 Confirming Debtors' First Amended Joint Plan of Reorganization As Twice Modified ("Confirmation Order").[10] The court then entered its Amended Findings of Fact and Conclusions of Law for Hearing on Confirmation of Debtors' First Amended Joint Plan of Reorganization as Twice Modified ("Amended Findings and Conclusions").[11] Neither the Plan, Confirmation Order, Memorandum Opinion, or the Amended Findings and Conclusions made any reference to the Limited Release or the Limited Release Motion.

In compliance with the court's earlier request, the Official Bondholders' Committee then filed a brief addressing the history of creditor committees. The Unofficial 13½% Noteholders' Committee responded and the Official Bondholders' Committee filed a reply to the response.

■ The court takes judicial notice of the fact that appeals were filed from two court orders denominated as Orders No. 153 and 164. The Confirmation Order (No. 164) overruled the objections of the Unofficial 13½ % Noteholders' Committee to the Plan and its confirmation. Order No. 164 encompassed Order No. 153 which resolved the issue of subordination among the different

levels of public debt of Envirodyne Industries, Inc. Both the District Court[12] and the Seventh Circuit[13] have affirmed Orders 153 and 164. The Seventh Circuit notes that the Plan was effectuated on December 31, 1993.

Subsequent thereto, the Official Bondholders' Committee has moved for an order discharging it, its members and its professionals. On August 17 1994, this court entered Order 213 disbanding the committee and discharging its members from their collective fiduciary duties.

## II. Discussion

The Official Bondholders' Committee asserts that its motion merely seeks a release for its members and professionals for their work in connection with the committee, except for any such acts or omissions that are considered "willful misconduct," and that the Limited Release Motion merely seeks a "comfort order" in that it articulates the qualified immunity that the courts already recognize for official committees, its members, and retained professionals. Further, it argues that the history of official committees supports the issuing of the Limited Release and that these factors negate the need for expansive notice of the Motion. The Debtors' joinder seeks to extend the Limited Release to the Official Trade Creditors' Committee and its professionals and additionally, seeks an order discharging the Official Bondholders' Committee. Both believe that the

*Industries, Inc. (Findings of Fact and Conclusions of Law for Hearing on Confirmation of Debtors' First Amended Joint Plan of Reorganization as Twice Modified)*, Docket Under Case No. 93 B 319 (Bankr.N.D.Ill. Dec. 13, 1993) (Docket Entry No. 811).

**9.** *See In re Envirodyne Industries, Inc. (Order No. 160 Authorizing Certain Modifications To Debtors' First Amended Joint Plan of Reorganization as Twice Modified)*, Docket Under Case No. 93 B 319 (Bankr.N.D.Ill. Dec. 15, 1993) (Docket Entry No. 818).

**10.** *In re Envirodyne Industries, Inc. (Order No. 164 Confirming Debtors' First Amended Joint Plan of Reorganization as Twice Modified)*, Docket under Case No. 93 B 319 (Bankr.N.D.Ill. December 17, 1993) (Docket Entry No. 824).

**11.** *See In re Envirodyne Industries, Inc., et al. (Amended Findings of Fact and Conclusions of*

*Law for Hearing on Confirmation of Debtors' First Amended Plan of Reorganization as Twice Modified)*, 1993 WL 566565 (Bankr.N.D.Ill. Dec. 20, 1993).

**12.** *See Unofficial Committee of 13.5% Noteholders of Envirodyne Industries, Inc. v. Envirodyne Industries, Inc. (In re Envirodyne Industries, Inc.)*, No. 93 C 7680 (N.D.Ill. December 28, 1993 (J. Holderman)) (affirming Orders No. 153 and 164); *see also Unofficial Committee of 13½% Noteholders of Envirodyne Industries, Inc. v. Envirodyne Industries, Inc. (In re Envirodyne Industries, Inc.)*, No. 93–CV–7502 (N.D.Ill. December 22, 1993 (J. Alesia)) (dismissing the appeal of Order No. 153 as moot in light of the concurrent appeal of Order No. 164 before J. Holderman).

**13.** *In re Envirodyne Industries, Inc.*, 29 F.3d 301 (7th Cir.1994).

"willful misconduct" standard of liability is appropriate for official committees.

The issues raised by the parties responding to the Limited Release Motion are summarized as follows:

The U.S. Trustee has expressed three concerns regarding the Limited Release Motion: (1) whether it is appropriate for the court to exercise its jurisdiction in this matter; (2) whether the notice given for the motion was sufficient; and (3) whether the "willful misconduct" standard is the appropriate standard of qualified immunity.

The Securities & Exchange Commission expressed its reservations about the Limited Release by suggesting that Bankruptcy Code section 1125(e) requires a narrower release than is proposed.

In outright opposition to the Limited Release Motion, the Unofficial 13½% Noteholders' Committee argues that: (1) the Limited Release Motion should be denied as moot, (2) this court may not have any jurisdiction to retain with regard to a suit against members of an official committee, (3) the Limited Release binds non-consenting creditors in violation of the law of the Seventh Circuit, and (4) the Limited Release acts to divest another court of its jurisdiction.

### A. Jurisdiction of the Bankruptcy Court to consider the Limited Release Motion.

■ A bankruptcy court has the power to determine the legality of a release incorporated into a reorganization plan. *In re Specialty Equipment Companies, Inc.,* 3 F.3d 1043, 1045 (7th Cir.1993); *see also In re Energy Cooperative, Inc.,* 886 F.2d 921, 930 (7th Cir.1989); 28 U.S.C. § 157(b)(2)(L). However, the proposed release provision before the court was not part of a proposed reorganization plan. Nevertheless, the court has jurisdiction over the Limited Release Motion as it involves matters relating to the confirmation of a plan and the administration of the bankruptcy estate. *See* 28 U.S.C. § 157(b)(2)(A), (L). Further, the Limited Release Motion is a core matter because it is a provision that was sought to be included in a confirmation order. *See Diamond Mort-*

*gage Corp. of Ill. v. Sugar,* 913 F.2d 1233, 1239 (7th Cir.1990) (stating that a proceeding is core if it invokes a substantive right provided by Title 11 or if it is a proceeding that, by its nature, could only arise in the context of a bankruptcy case), *cert. denied,* 498 U.S. 1089, 111 S.Ct. 968, 112 L.Ed.2d 1054 (1991). The alternative relief sought by the Official Bondholders' Committee involves the question of the court's retaining jurisdiction over actions filed against members of an official committee as a result of their actions as committee members. Therefore, the Limited Release Motion is a matter relating to the confirmation of a plan and the administration of the estate over which this court has core jurisdiction.

### B. Mootness of Limited Release Motion.

In objecting to the Limited Release Motion, the Unofficial 13½% Noteholders' Committee argues that the Limited Release Motion is moot because no relief is available. It asserts that because the confirmation order has been entered, all the court can do at this date is to issue a declaration of immunity. They further assert that this declaration would be improper, as it amounts to a declaratory judgment and declaratory judgments require the filing of adversary proceedings. The Official Bondholders' Committee sought its release by motion.

■ Any matter that is disputed and not specifically listed under one of the types of adversary proceedings under Fed.R.Bankr.P. 7001 falls under the catch-all term "contested matter." *See* Fed.R.Bankr.P. 9014; Fed.R.Bankr.P. 9014 Advisory Committee Note (1983) ("Whenever there is an actual dispute, other than an adversary proceeding, before the bankruptcy court, the litigation to resolve that dispute is a contested matter"). A contested matter differs from an adversary proceeding in that it is instituted by a motion, rather than a complaint. *Compare* Fed. R.Bankr.P. 9014 *with* Fed.R.Bankr.P. 7001.

■ It is correct that the court cannot issue a binding declaratory judgment with regard to any of the proceedings listed under Rule 7001 without conducting an adversary proceeding. *See* Fed.R.Bankr.P. 7001(1)–

(10). However, the Limited Release Motion does not fall within the scope of Rule 7001.

■ The court does not interpret the Limited Release Motion as asking it to issue a declaratory judgment. Instead, the form of the Limited Release Motion is one that asks this court to issue an order causing the creditors to release their claims against parties other than the Debtors, being the Released Parties. The substantive purpose of the Limited Release is to have this court issue an order stating what the standard of liability is for the Released Parties with regard to a suit filed against them in conjunction with this bankruptcy case. The validity and effect of such an order is another matter. Therefore, the mere fact that the movants and the court have not treated this matter as an adversary proceeding under Part VII of Federal Rules of Bankruptcy Procedure does not warrant the denial of the Motion.[14]

■ The movants' request that the Intended Release be incorporated into the Confirmation Order does not act to make the Limited Release Motion moot. Although the court has already issued the Confirmation Order (Order No. 164), the court could, in theory, provide some relief on the Limited Release Motion. A matter is considered moot when a court is unable to fashion a form of relief that would be of benefit to the party seeking it. *See Church of Scientology v. United States,* — U.S. ——, ——, 113 S.Ct. 447, 449, 121 L.Ed.2d 313 (1992). If partial relief is at least possible, then the matter is not considered moot. *See Envirodyne,* 29 F.3d at 303; *but see In re Andreuccetti,* 975 F.2d 413, 418 (7th Cir.1992) (stating that mootness involves an individualized assessment to determine if judicial relief is available as a *practical* matter). In theory, the court could issue an order releasing the Released Parties or declaring what the standard of liability is for acts taken by the Released Parties in conjunction with this bankruptcy case. The court may also be able to amend its confirmation order to in-

clude the Limited Release. However, the propriety and effect of such actions are another matter and addressed elsewhere. Certainly, the alternative relief requested by the Limited Release Motion—the retention of jurisdiction over any claims, rights or causes of action asserted against the Released Parties for acts or omissions related to their individual or collective failures to act during the Debtors' bankruptcy cases and if necessary, the liquidation of such claims, is not moot. These bankruptcy cases have not been closed and the court may consider whether such relief is warranted and the proper. The conceivable availability of some form of relief allows the court to consider the merits of the Limited Release Motion.

■ The Seventh Circuit recognizes that, in theory, a plan of reorganization, even one that has been consummated, can be disturbed under some circumstances. *See Envirodyne,* 29 F.3d at 303; *In re UNR, Inc.,* 20 F.3d 766, 769 (7th Cir.), *cert. denied,* — U.S. ——, 115 S.Ct. 509, 130 L.Ed.2d 416 (1994) (No. 94–366). What those circumstances are is a different inquiry than one of mootness. That is, after deciding that a party is entitled some form of relief, the court must ask whether it should use its equitable powers to grant that relief. *See Envirodyne,* 29 F.3d at 304. Until the Seventh Circuit rejected the term, this concept was called "equitable mootness." *Id.; UNR,* 20 F.3d at 768. (J. Easterbrook) (banishing the use of the term "equitable mootness" because its title is a misnomer). In the reorganization context, the equity inquiry focuses on whether it would be prudent for a court to modify an implemented plan when that modification will affect third parties. *See Envirodyne,* 29 F.3d at 304 (stating that if the modification of an implemented plan would unduly bear on the legitimate expectations of innocent third parties, such modification may be refused); *UNR,* 20 F.3d at 769 (stating that the term "equitable mootness" really involves the question of whether it is prudent to upset a plan of reorganization as

---

**14.** Even if the Limited Release were considered a declaratory judgment, this does not mean that an adversary proceeding would have been required, as Fed.R.Bankr.P. 7001 does not define all proceedings seeking declaratory judgments as being adversary proceedings. Only proceedings seeking a declaratory judgment with respect to the other types of proceedings listed in rule 7001 are automatically subject to Part VII of the Federal Bankruptcy Rules.

opposed to the mootness analysis of whether there still exists the ability by the court to provide some form of relief). Because the merits of the Limited Release Motion would not cause the court to issue an order amending its Confirmation Order, it need not decide whether such action would be equitable.

### C. Propriety of Notice.

The Official Bondholders' Committee gave notice of the Limited Release Motion to those listed on the service list for the confirmation hearing. It did not give notice of the Limited Release Motion to all of the creditors of Envirodyne or even to all of the Official Bondholders' Committee's constituents. At one point, the court questioned in open court whether the Official Bondholders' Committee wished to serve additional parties with notice of the motion. It responded that notice was adequate and that it would stand on the notice already given.

In the case of the Limited Release Motion, those affected by it should have been given notice and an opportunity to be heard. *See* Fed.R.Bankr.P. 9014 (stating that reasonable notice and an opportunity for hearing must be afforded to the party against whom relief is being sought). The Official Bondholders' Committee should have served the Limited Release Motion on all the parties it sought to bind, which are purported to be "any creditor or equity security holder of the Debtors." *See* Fed.R.Bankr.P. 9014. The Official Committee's failure to give notice to these parties warrants the denial of the Limited Release Motion.

Additionally, since the Limited Release is fashioned as a release by creditors of parties other than the Debtor, then the creditors should have been given, at the onset, the opportunity to vote on the Limited Release as part of the plan acceptance process. The mere fact that the Limited Release was sought to have been incorporated into the confirmation order is one of form not substance—amending the confirmation order in this manner has the effect of amending the Plan, which would trigger the amendment procedures. The Limited Release could have

been proposed as a term of the proposed reorganization plan and addressed in an approved disclosure statement. The Limited Release would then bind those creditors specifically voting for the relief. *See Specialty Equipment*, 3 F.3d at 1047.[15]

In their briefs, the Official Bondholders' Committee asserted that the Limited Release conforms with the standard of liability already adopted by the courts with regard to suits against official committees. They argue that the Limited Release is a "comfort order" giving them what they already have and that this acts to negate the need for expansive notice. Even if the Limited Release was a comfort order, this does not negate the need for notice. The Official Bondholders' Committee is free to assert what the proper standard of liability at the time it is sued and in front of the court hearing the suit. *See, e.g., Luedke v. Delta Air Lines, Inc.*, 159 B.R. 385, 387–89 (S.D.N.Y.1993) (analyzing qualified immunity as an affirmative defense to a suit against official committee members); *In re Tucker Freight Lines, Inc.*, 62 B.R. 213, 215, 218 (Bankr.W.D.Mich.1986) (denying committee members' motion for summary judgment on the issue of immunity and leaving such issue for final resolution in the District Court in which the suit was initiated). It would not be proper for this court issue a binding order declaring a standard of liability when the parties that would be affected by such an order have not been given proper notice nor an opportunity to be heard. What the proper standard of qualified immunity should be is therefore left for another day.

### D. Propriety of a Post–Confirmation Order Imposing a Release.

A proposed reorganization plan may contain a release as part of its provisions. *See Specialty Equipment*, 3 F.3d at 1047; *Energy Cooperative*, 886 F.2d at 930. Such releases are proper if they are consensual and non-coercive. *Specialty Equipment*, 3 F.3d at 1047 (citing *In re AOV Industries, Inc.*, 792 F.2d 1140, 1145 (D.C.Cir.1986); *In re Monroe Well Service,*

---

15. The court further addresses the proper method of instituting a non-debtor release in its discussion of the propriety of a post-confirmation order imposing a release. See *infra* part D.

*Inc.,* 80 B.R. 324 (Bankr.E.D.Pa.1987)). These releases are interpreted as binding only those creditors voting in favor of the plan. *Specialty Equipment,* 3 F.3d at 1046. However, the Official Bondholders' Committee did not propose to include the Limited Release as part of the reorganization plan. Instead, they sought to include the Limited Release as part of a confirmation order and then later as a post-confirmation order.

That distinguishes this case with those cited by the Official Committee. In published opinions where releases have been issued, the plan acceptance process has been followed and the releases were treated as a provision of the proposed plan, binding only those who voted in favor of the plan. *See In re Boston Harbor Marina,* 157 B.R. 726, 730–31 (Bankr.D.Mass.1993) (release is limited to the creditors who accept the plan provision containing the release); *In re Apex Oil Co.,* 118 B.R. 683, 701 (Bankr.E.D.Mo.1990); *In re Orlando Investors, L.P.,* 103 B.R. 593, 597 (Bankr.E.D.Pa.1989). The Official Committee did not cite, nor could the court locate, any cases in which nonconsenting creditors were bound by a release provision in the plan.

The Official Committee has cited several bankruptcies where court orders confirming plans have provided for the release and/or indemnification of committee members. However, these bankruptcy cases apparently involve unpublished decisions. Besides lacking copies of the actual confirmation orders, the court is unaware of the history of these cases and the reasoning behind the issuing of such orders.

Besides circumventing the whole plan approval process and the limiting language of the Seventh Circuit in its *Specialty Equipment* opinion, 3 F.3d 1043, the court can see no practical difference between issuing the release as part of a confirmation order and the incorporation of the provisions into a proposed reorganization plan. The uneasiness the court has with the Limited Release is exacerbated by the fact that Plan has been confirmed and the Confirmation Order has already been issued. The Confirmation Order would have to be amended to incorporate the Limited Release or more correctly, the reorganization Plan amended and put out for approval. This possible modification is further complicated by the fact that the Plan has been substantially consummated.

As stated in its mootness discussion above, the Seventh Circuit recognizes that in certain special circumstances, a court may modify a consummated reorganization plan. *See Envirodyne,* 29 F.3d at 302; *UNR,* 20 F.3d at 769. The court interprets this power as deriving from its equitable power to modify its confirmation order and, in effect, modify the plan. However, the court is not yet aware of the special circumstances necessary for it to use this power. Because the court decides that the lack of notice given on the Limited Release Motion and the method by which the movants sought to impose the Limited Release warrants the denial of their motion, the court denies the Motion on its merits. It need not decide whether special circumstances are present here so as to allow it to modify the Confirmation Order.

### E. Retention of Jurisdiction.

█ Order No. 164 provides that the Official Bondholders' Committee and the Official Trade Committee will continue to exist until the court orders otherwise. Order No. 164 at 12. Further, the order retains jurisdiction to allow the court to enter a final decree closing the bankruptcy cases. Order No. 164 at 3. Although the court has since discharged the Official Bondholders' Committee, it retains jurisdiction over the Limited Release Motion as well as all other matters related to the administration of the estate. 28 U.S.C. § 157(b)(2)(A). This provision, along with 11 U.S.C. § 105,[16] allows the court to retain its jurisdiction in this case and consider the Limited Release Motion. Further, in accordance with the Confirmation Order, it retains jurisdiction of the Official Bondholders' Committee.

---

**16.** Section 105 provides that the court may issue any order that is necessary or appropriate to carry out the provisions of the Bankruptcy Code.

Finally, under the Bankruptcy Code, the court has jurisdiction over the acts of official committee members in conjunction with their status as committee members. Although neither counsel nor the court have located a cow case (one on all fours), it is the court's opinion that its jurisdiction over committee members is similar to that it has over trustees. *In re Elegant Equine, Inc.*, 155 B.R. 189 (N.D.Ill.1993) (adversary proceeding against the former Chapter 11 trustee for his alleged breach of fiduciary duty in connection with the sale of assets of the estate was a core proceeding); *In re American Solar King*, 142 B.R. 772 (Bankr.W.D.Tex.1992) (suit alleging misconduct of trustee in administering the debtor's estate was a core proceeding). Both trustees and official committees are the creation of the Code and their duties are governed under the Code. *See* §§ 1102–1104, 1106. In addition, both trustees and members of official committees owe fiduciary duties to their respective constituencies. *In re Marchiando*, 13 F.3d 1111, 1115 (7th Cir.) ("the high standard of loyalty and care that the law imposes on [bankruptcy] trustees is encapsulated in the term 'fiduciary duty.' "), *cert. denied sub nom., Illinois Department of Lottery v. Marchiando,* —— U.S. ——, 114 S.Ct. 2675, 129 L.Ed.2d 810 (1994); *In re L.F. Rothschild Holdings, Inc.*, 163 B.R. 45, 49 (S.D.N.Y.1994) (section 1103 implies a fiduciary duty to committee members); *In re Drexel Lambert Group, Inc.*, 138 B.R. 717, 720 (Bankr.S.D.N.Y.) (same), *aff'd,* 140 B.R. 347 (S.D.N.Y.1992). Accordingly, if the bankruptcy court has jurisdiction in actions against a trustee for its improper actions in connection with administering the estate, then it must also have jurisdiction over actions alleging improper actions taken by members of an official committee. Whether that jurisdiction is exclusive is another matter. In the first instance, it is the court which receives a suit against official committee members for such actions or inactions which must answer that question.

### III. Conclusion

For the reasons stated above, the court concurs with the Official Bondholders' Committee that it has core jurisdiction to hear the Limited Release Motion and that the matters presented in it are not moot. Notwithstanding this, the court denies the Official Bondholders' Committee's Limited Release Motion as well as the release proposed by the Debtors in their joinder thereto. The Limited Release was not included as part of the Plan and the creditors that would be bound by the release were not given proper notice nor an opportunity to accept or reject the proposed relief.

With respect to the actions taken by members of the Official Bondholders' Committee in their capacity as Committee members, to the extent such actions were improper and an action is brought, this court would have core jurisdiction over such matters. If and when such an action is brought, is time enough for the court to determine what the standard of qualified immunity is for the members of the committee.