United States Court of Appeals,

Fifth Circuit.

No. 96-20694.

In the Matter of ADVISORY COMMITTEE OF MAJOR FUNDING CORPORATION, Debtor.

ADVISORY COMMITTEE OF MAJOR FUNDING CORPORATION, Appellant,

v.

Ronald J. SOMMERS, Appellee.

April 3, 1997.

Appeal from the United States District Court for the Southern District of Texas.

Before JOLLY, JONES and WIENER, Circuit Judges.

E. GRADY JOLLY, Circuit Judge:

This appeal presents a question of the interpretation of a bankruptcy reorganization plan, that establishes and empowers a postconfirmation advisory committee. The only question presented is whether the reorganization plan allows the advisory committee to hire an attorney. To answer this question, we are required to interpret 11 U.S.C. § 1103, which was incorporated as a term of the reorganization plan. We hold that under section 1103, which speaks of the powers and duties of creditors' committees, it makes no sense at all to define separately powers and duties. Instead, powers and duties are intertwined and must be interpreted to allow the trustee effectively to carry out the duties with which he is charged under the statute. Therefore, the advisory committee is entitled under the plan to hire counsel if approved by the court.

I

Major Funding Corporation, a business engaged in the sale of home improvement loans as a retirement investment, filed a Chapter 11 bankruptcy petition in 1987. The company's bankruptcy left approximately fifteen hundred investors holding claims totaling roughly $50 million. The appellee, Ron Sommers, was appointed as the Chapter 11 trustee.

In 1991, the bankruptcy court confirmed the trustee's proposed Second Amended Plan of Reorganization (the "Plan") and an accompanying Liquidating Trust Agreement (the "Trust

Agreement"). These documents provided for the liquidation of the company's assets, and the formation of a Liquidation Trust (the "Trust"), from which distributions to creditors would be paid. Under the Plan, Sommers was again appointed as trustee to oversee the liquidation, and was given "all the powers and duties [of a trustee] under § 1104 of the Bankruptcy Code."[1]

The Plan also established a postconfirmation "Advisory Committee." The Plan provided that the Advisory Committee

> shall be formed to carry out duties under 11 U.S.C. § 1103 and to advise and consult with the trustee on postconfirmation operations and expenses pursuant to the Plan of Reorganization and the Liquidating Trust.

In addition to advising the trustee, the Advisory Committee was given the power to veto the sale or purchase of assets. If the committee vetoed an asset transaction, the Trustee could petition the bankruptcy court to approve the transaction.

The Plan also provided:

> The reasonable costs and expenses of the advisory committee relating solely to their duties under the Plan shall be treated as post-conformation administrative expenses and shall be submitted to the Trustee on a monthly basis for payment from the contingency reserve fund.

The Advisory Committee maintains that it discovered gross overspending by the Trustee in his management of the Trust. The Advisory Committee contends that it "provided the Trustee with written reports documenting these runaway expense levels, as well as other managerial deficiencies.... The Committee has also met with the Trustee to implore him to reduce expenses." Because these meetings have failed to produce results acceptable to the Advisory Committee, the Committee contends that to fulfill its obligations under the Plan, it must "retain counsel to negotiate with the Trustee, and if necessary, file appropriate motions either to require the Trustee to implement the Committee's recommendations or to seek his termination."

The Advisory Committee sought the bankruptcy court's permission to hire an attorney who would be paid by the Trust. The Advisory Committee believed it had the authority to hire an attorney, because the Plan gave the it all the duties under section 1103 of the bankruptcy code.

---

[1] Although the Plan incorporates section 1104 of the Code, it probably intended to incorporate section 1106, which establishes the "Duties of trustee and examiner." Section 1104 merely governs the appointment of a trustee, without establishing the trustee's powers or duties.

Section (a) of that section provides that a committee may hire an attorney to perform needed services.

The Trustee opposed the motion, and after a hearing, the bankruptcy court refused to allow counsel to be paid by the Trust. The court refused on the grounds that

> [t]he Plan expressly gives the Advisory Committee the duties of 11 U.S.C. § 1103, but not the powers, and this language is unambiguous, especially as compared with the express language of the Plan giving [The Trustee] the "powers and duties" under 11 U.S.C. § 1104.

Thus, the bankruptcy court interpreted the Plan only partially to incorporate the provisions of section 1103: the Plan truncated from its terms any and all powers provided in § 1103. As relevant to this appeal, the bankruptcy court apparently interpreted section 1103(a) as providing a *power* to hire an attorney, but not imposing a *duty* to do so. Consequently, the Plan gave *this* Advisory Committee no power to hire an attorney, notwithstanding that a duty for the Advisory Committee to hire an attorney might arise under other provisions of the plan, including section 1103—an odd result to be sure.

After a motion for reconsideration was denied, the Advisory Committee filed an appeal with the district court. The district court affirmed the bankruptcy court's order without issuing an opinion. The Advisory Committee then appealed to this court.

## II

This appeal only involves questions of law, and, therefore, this court's review is *de novo*.[2] The only question on appeal is whether the Plan that established the Advisory Committee allows the Committee to hire counsel, at the Fund's expense, to investigate alleged misconduct by the Trustee. We hold that under the Plan, the Committee had the duty to petition the bankruptcy court to hire an attorney, to investigate and prosecute the alleged mishandling of the trust. Because such a duty existed, if the bankruptcy court finds that an attorney is needed, the attorney should be paid out of the Trust's contingency reserve fund, as provided by the Plan.

## III

This case primarily involves a question of contractual interpretation; the postconfirmation creditors' committee is a creature of contract. Its powers and duties are derived solely from the Plan.

---

[2]*Matter of Killebrew,* 888 F.2d 1516, 1519 (5th Cir.1989).

We interpret the Plan, using traditional tools of contractual interpretations, to determine the responsibilities and powers of the Advisory Committee. Nevertheless, because the contract specifically incorporates by reference a section of the Bankruptcy Code, we must interpret the Code as well.

To understand the nature of the Advisory Committee, we must examine the Plan. The entire description of the Advisory Committee is limited to two pages in the Plan. The Plan creates the Advisory Committee and provides for the replacement of committee members when necessary. Only two other provisions of the Plan directly relate to the Advisory Committee. One of these sections limits the liability of the Advisory Committee, but does not create any duties or powers of the committee. Therefore, the remaining section, entitled "Duties," is the sole source of any authority for the Advisory Committee to hire an attorney at the fund's expense. The Duties section provides, in part:

> The advisory committee shall be formed to carry out duties under 11 U.S.C. § 1103 and to advise and consult with the trustee on post-confirmation operations and expenses pursuant to the Plan of Reorganization and the Liquidating Trust. The reasonable costs and expenses of the advisory committee relating solely to their duties under the Plan shall be treated as post-confirmation administration expenses and shall be submitted to the Trustee on a monthly basis for payment from the contingency reserve fund.

> The advisory committee shall make recommendations to the Trustee concerning the sale of the loan portfolio and all other post-confirmation operations. The Trustee shall [notify the advisory committee] of any offer to purchase or sell the promissory note portfolio.... The advisory committee shall, after majority vote, notify the [Trustee] in writing of any vote for or any veto vote against the proposed sale or offer to purchase.... After written notification of any veto vote by the advisory committee chairperson, the Trustee shall, in the event the Trustee disagrees with the veto vote against the sale or offer to purchase, have the authority to request bankruptcy court approval of any offer to purchase or sell the loan portfolio.

The express language of this provision provides that the "reasonable costs and expenses" of the committee shall be paid if they relate "solely to [the committee's] duties under the Plan." Therefore, to the extent that hiring an attorney to negotiate or pursue action against the Trustee is a duty of the committee, such expense is clearly subject to reimbursement from the Plan.

As an initial note, it appears clear that under the plan there are two basic categories of duties imposed on the committee. First, it has duties that originate under section 1103. Only a careful parsing of the statute will reveal the nature and extent of these duties.

Second, it has the duty to advise and consult with the Trustee on post-confirmation operations. Encompassed in this duty is the express right to veto investment decisions taken by the Trustee. It would thus appear that the Advisory Committee would have the right to hire counsel to represent it at a bankruptcy hearing in which a veto of an investment decision is being contested. Without doubt, in these circumstances, the Committee would be entitled to have counsel's fees paid by the Trust. Therefore, at a minimum, we conclude that the Plan does not generally deny the Committee the power to hire an attorney at the Plan's expense. Nonetheless, the challenge raised today, does not involve this scenario. Instead, the advisory committee makes a broad challenge to the Trustee's management of the Trust. Therefore, the Advisory Committee's right to hire counsel must arise, if at all, from it duties under section 1103. We now examine that provision.[3]

---

[3]Section 1103 provides in its entirety:

1103. Powers and duties of committees

(a) At a scheduled meeting of a committee appointed under section 1102 of this title, at which a majority of the members of such committee are present, and with the court's approval, such committee may select and authorize the employment by such committee of one or more attorneys, accountants, or other agents, to represent or perform services for such committee.

(b) An attorney or accountant employed to represent a committee appointed under section 1102 of this title may not, while employed by such committee, represent any other entity having an adverse interest in connection with the case. Representation of one or more creditors of the same class as represented by the committee shall not per se constitute the representation of an adverse interest.

(c) A committee appointed under section 1102 of this title may—

(1) consult with the trustee or debtor in possession concerning the administration of the case;

(2) investigate the acts, conduct, assets, liabilities, and financial condition of the debtor, the operation of the debtor's business and the desirability of the continuance of such business, and any other matter relevant to the case or to the formulation of a plan;

(3) participate in the formulation of a plan, advise those represented by such committee of such committee's determinations as to any plan formulated, and collect and file with the court acceptances or rejections of a plan;

(4) request the appointment of a trustee or examiner under section 1104 of this title; and

IV

The Plan provides that the Advisory Committee "shall be formed to carry out *duties* under 11 U.S.C. § 1103." There is no reference in the Plan to the powers provided in this statute. Section 1103, however, is captioned "Powers and duties of committees." The Trustee contends that the Plan, by its express terms, incorporates only the *duties* given to committees, and not the *powers* granted under 1103. The Trustee maintains that by reading the language of the Plan as a whole, it becomes clear that the Plan intended to differentiate between power and duties granted under section 1103, and only gave the Advisory Committee the section 1103 duties. Therefore, we first attempt to discern which parts of section 1103 create committee powers, and which sections create committee duties.

Section 1103 (a) provides: "At a scheduled meeting of a committee ..., at which a majority of the members of such committee are present, and with the court's approval, such committee may select and authorize the employment by such committee of one or more attorneys ... to represent or perform services for such committee." Reading this section in isolation, its use of the permissive—"may"—suggests that it gives the committee the power to hire an attorney, but does not impose a duty to do so.

Section 1103(b) provides that an attorney hired pursuant to section (a) may not represent any other entity having an adverse interest. Therefore, this section limits the power granted under section (a). Perhaps one could strain to define this as a duty: the duty to not hire an attorney who has a conflict of interest. Nonetheless, if section (a) is not incorporated into the Plan as a "Duty," section (b) certainly cannot be incorporated. Therefore, for the purposes of the Plan, section 1103(b) cannot provide a duty.

Section (c) provides that a committee *may* do a variety of things to promote the interest of the creditors it represents. Again, the use of "may" appears to grant a power, not a duty. Finally,

---

(5) perform such other services as are in the interest of those represented.

(d) As soon as practicable after the appointment of a committee under section 1102 of this title, the trustee shall meet with such committee to transact such business as may be necessary and proper.

section (d) provides that "As soon as practicable after the appointment of a committee ..., the trustee shall meet with such committee to transact such business as may be necessary and proper." This provision appears to impose a duty. The duty, however, is imposed upon the trustee, not the committee. Had the section provided that "the trustee and the committee shall meet" or "the committee shall meet with the trustee" we would conclude that this section provides a duty to be incorporated into the Plan. Applying the same strict rule of interpretation to this section, as we did to the earlier sections, however, reveals that no duty is created.[4]

This analysis of section 1103 convinces us that the use of the permissive "may" throughout the section cannot be read to impose only powers, and not duties. A more reasonable reading comes to light when section 1103 is interpreted in the context of the Bankruptcy Code. Under the Code, section 1103 governs the workings of Creditor Committees. Creditor Committees have the responsibility to protect the interest of the creditors; in essence, "the function of a creditors' committee is to act as a watchdog on behalf of the larger body of creditors which it represents."[5] Section 1103 provides the tools with which the creditors' committee work.

When a power granted under section 1103 is needed for the committee to fulfill its overriding duty of protecting the creditors' interest, the committee is obliged to employ the power. Therefore, properly understood, a crisp dichotomy between powers and duties under section 1103 simply does not and cannot exist. It has been noted that the "*duties* of a chapter 11 creditors' committee are essentially described in section 1103 of the Bankruptcy Code and are *inexorably intertwined with corresponding rights and powers* possessed by the committee also described in section 1103."[6] A "creditors' committee not only has, with the court's approval, the power to employ attorneys,

---

[4]Moreover, if we were to believe that *only* section 1103(d) imposed a duty on a committee the structure of the Plan would be quite odd. Presumably if the Plan's reference to § 1103 only was designed to import the very simple duty that the committee and the trustee must meet, the drafters would have simply included this requirement directly in the contract.

[5]*In re AKF Foods, Inc.,* 36 B.R. 288, 289 (Bankr.E.D.N.Y.1984); Andrews, The Chapter 11 Creditors' Committee: Statutory Watchdog?, 2 Bankr.Dev. J. 247 (1985).

[6]Irving Sulvmeyer, For Creditors' Committees (Lawrence P. King, ed., Matthew Bender 1996).

accountants, and other agents to represent or perform services for the committee, it has the duty to determine what assistance it requires in order to perform its duties, when such assistance is required, and to select those best qualified to render such assistance."[7]

In sum, the use of "may" in some parts of section 1103 does not differentiate a power from a duty.[8] Instead, section 1103 essentially requires the committee to act in the best interest of the creditors it represents.[9] The committee has the duty to use any tool available under section 1103 to accomplish this goal. Therefore, all of section 1103 must be read together as imposing a duty, and all terms of the section is incorporated into the Plan.

V

With this understanding of section 1103 "duties," it becomes clear that at a minimum, the Advisory Committee had the obligation to "perform such other services as are in the interest of those represented." § 1103(c)(5). There can be no doubt that taking appropriate action to investigate questionable behavior on the part of the Trustee falls within this requirement. The Advisory Committee has attempted to resolve this perceived problem without the help of counsel, without success. Therefore, the committee is required by its duties under section 1103 to take the next step: petition the bankruptcy court for permission to hire counsel, and, if approved, to proceed with legal action, if necessary. These steps are to be taken in accord with the requirements of section 1103(a) and (b). Because the Plan provides for the reimbursement of reasonable expenses, if the bankruptcy court finds that appointment of counsel is proper the Advisory Committee is entitled to have the

---

[7]*Id.* at ¶ 13.09. Another leading treatise has noted that to some extent, the use repeated use of "may" in section 1103 is misleading: one leading treatise has recognized that "[w]hile section 1103(c) states that a ... committee "may' exercise certain functions, the exercise of such duties is not necessarily permissive." 5 Collier on Bankruptcy, ¶ 1103.07 (15th Ed.1987).

[8]*See, e.g., In re Doctors' Hosp. of Tampa,* 183 B.R. 312 (Bankr.M.D.Fla.1995), describing 1103(c)(2), (5) as imposing duties; *In re Pintlar Corp.,* 1994 WL 553054 (Bankr.D.Idaho 1994)(describing section 1103(c) as imposing duties); *In re U.S. Truck Co.* 71 B.R. 99, 103 (Bankr.E.D.Mich.1987)(same).

[9]*In re L.F. Rothschild Holdings, Inc.,* 163 B.R. 45, 49 (S.D.N.Y.1994) (section 1103 implies a fiduciary duty to committee members); *In re Envirodyne Industries, Inc.,* 174 B.R. 955 (Bankr.N.D.Ill.1994)(same); *In re Tucker Freight Lines,* 62 B.R. 213, 216 (Bankr.W.D.Mich.1986)(same).

reasonable cost of counsel paid from the Trust's contingency reserve fund as approved by the court.

For the reasons set forth above, the order of the district court, affirming the bankruptcy court is REVERSED and this case is REMANDED for further proceedings not inconsistent with this opinion.

REVERSED and REMANDED.